In re Leroy James
**BEREOLOS, Debtor.**

**Bankruptcy No. 88–61820.**

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division.

Sept. 20, 1990.

Bryan Goins, Hammond, Ind., for plaintiff.

John Maksimovich, Griffith, Ind., for debtor.

## MEMORANDUM OPINION AND ORDER

KENT LINDQUIST, Chief Judge.

### I.

*Statement of Proceedings*

This contested matter came before the court on the Objection of Citizen's Federal Savings and Loan Association (hereinafter "Citizens") filed on January 23, 1990 to the Debtor's Second Petition to Modify Plan After Confirmation. The court held a pre-hearing conference on this matter on March 23, 1990 and ordered the parties to

file briefs on the issue of whether a Debtor may modify a chapter 13 plan post-confirmation to cure a post-confirmation mortgage arrearage.

## II.

### Statement of Facts

Leroy James Bereolos (hereinafter: "Debtor"), filed this chapter 13 proceeding on November 2, 1988. The Debtor's initial summary of plan, filed November 14, 1988, included provisions for: 1) payments to be made over a 60 month term; 2) a 90% distribution to unsecured creditors; 3) current mortgage payments on Citizen's first mortgage on the Debtor's primary residence in the amount of $348.00 per month to be paid through the trustee and 4) a prepetition arrearage on the mortgage to Citizens of $1,600.00 to be paid at the rate of $30.93 per month for sixty months. A sixty month plan could extend no further than to November 13, 1993 pursuant to § 1322(c).

The chapter 13 trustee held the section 341 meeting of creditors on December 12, 1988. Subsequent thereto, Commercial Credit Loans, Inc. filed an objection to the Debtor's plan. The Debtor filed its first Amended Plan on March 9, 1989. This plan did not alter the treatment of Citizen's claim as included in the plan originally filed with the court. On March 28, 1989, Citizens filed an objection to the Debtor's First Amended Plan and an Application for Abandonment of the Debtor's residence and a request for modification of the Automatic Stay of Proceedings. The objection to the plan alleged that the plan did not cure the default within a reasonable time or provide for an adequate interest rate on the arrearage. The court set the motion for relief and abandonment for a pre-hearing conference on May 10, 1989 and the objection to confirmation for a pre-hearing conference on May 9, 1989. As a result of the pre-hearing conference on the objection to confirmation, the court ordered the Debtor to submit a Second Amended Plan within 30 days.

On May 22, 1989, the Debtor filed his Second Amended Plan and Summary thereof which the Debtor mailed to all creditors on May 23, 1989. The court also ordered the Debtor to serve an order and notice to creditors that any objections to the Debtor's Second Amended Plan must be filed with the court on or before June 19, 1989. This plan provided for a current regular mortgage payment of $348.00 per month to Citizens, and a $38.00 payment per month to be applied to the curing of a default to Citizens in the sum of $2,235.47. This plan also evidenced an intent to pay 90% of the unsecured claims. The plan called for payments for a period not to exceed five years. No objections were filed to the Second Amended Plan and the court confirmed the same by order on July 25, 1989.

Soon after confirmation, on August 31, 1989, Citizen's filed a second application for modification of the automatic stay of proceedings. The application for relief was based on the Debtor's failure to make the payments called for by the confirmed plan. On September 5, 1989, the Debtor filed an objection to Citizen's motion for relief. The court set this matter for a pre-hearing conference on September 28, 1989. On September 28, 1989, the Debtor and Citizens advised the court that they were trying to settle the motion for Stay Relief and requested that the court re-set the pre-hearing.

On November 13, 1989, the Debtor filed his First Petition to Modify Chapter 13 Plan after Confirmation. This plan included provision for: 1) reduction of payment to unsecured creditors to 0%; 2) payment of current monthly mortgage payment due Citizens of $348.00 per month; 3) payment on the pre-petition arrearage of $2,235.47 at the rate of $38.00 per month, (this would take 58.83 months), and 4) payment on the post-petition arrearage of $1,740.00 to Citizens on the regular monthly mortgage payment at the rate of $72.50 per month (This would take 24 months). The plan was proposed to be sixty months in duration. On December 4, 1989, Citizens filed an objection to the Debtor's petition to modify which the court set for a pre-hearing conference on January 23, 1990. The objection alleged that the current mortgage payment

was $358.53 not the $348.00 proposed by the plan. The objection further alleged that the proposed modification was contrary to § 1322(b)(2) in that the Debtor was attempting to alter the contractual rights of a mortgage holder on his primary residence, in that the loan expires on June 1, 1993, that the arrearage by the terms of the plan cannot be cured in a reasonable time, and that "§ 1322(b) cannot be used to cure the defaults under the loan insofar as the last payment due on the note is not due after the date on which the final payment under the proposed plan is due." Citizens also asserted that the plan was not feasible in that the Debtor had not shown he can pay an additional $113.43 a month from January 1, 1990 in order to cure all arrears by June 1, 1993. The objection also asserted that attorneys fees of $525.00 have been incurred by the creditor and the post-petition arrearage is $2,200.72 and not $2,048.18 as provided in the plan. The court also set the Motion by Citizens for relief for the automatic stay for a final evidentiary hearing on January 23, 1990.

On December 26, 1989, the Debtor filed his Second Petition to Modify his Chapter 13 Plan after Confirmation which the court ordered the Debtor to notice creditors thereof and allowed creditors to file any objection thereto by January 24, 1990. This plan provided for a current monthly mortgage payment to Citizens of $348.00 and $113.43 per month until termination of the plan to be applied toward a pre-petition arrearage of $2,048.18, and a post-petition arrearage of $2,200.72 plus $515.00 in attorneys fees. The proposed plan was for a period of sixty months. This proposed plan lumped the pre and post confirmation arrears, plus attorneys fees due together for a total of $4,763.90. The plan period had only approximately 47 months to go at a maximum when the second amended plan was filed on December 26, 1989. A monthly payment of $113.43 on the $4,763.90 total arrears would take 42 months, without interest. No amended budget was filed by the Debtor to show that he could fund the proposed plan.

On January 25, 1990, the court modified the automatic stay of proceedings so that Citizens could proceed with an action in the appropriate state or federal court to foreclose its lien as to the Debtor's property which was the subject matter of the motion. The modification order further provided that Citizens could obtain a final judgment and decree as to the foreclosure of its lien, but that no order of sale based on any such judgment and decree may issue thereon until Citizens obtains further leave of this court. The exception to the above proviso is when the stay had been previously vacated due to the Debtor's default in payments ordered herein.

On January 23, 1990 Citizen's filed its Objection to the Debtor's Second Post–Confirmation Modification alleging: 1) that the contract provides for a current monthly payment of $358.53 per month rather than the $348.00 per month proposed in the plan; 2) that the modification proposes to cure post-petition defaults of the previously confirmed plan, and thus modifies Citizen's mortgage contrary to § 1322(b)(2); 3) that the mortgage loan expires on June 1, 1993 and the arrearage cannot be cured prior to that time in order to comply with section 1322(b)(5); 4) that the plan is not feasible insofar as the Debtor cannot pay $113.43 toward the arrearage in addition to making his regular payments; and 5) that the history of this case shows that the Debtor is incapable of meeting his obligations.

Citizen's Brief in support of its objection argues only that the court should not allow Debtor to provide for a post-petition mortgage arrearage cure by modifying a confirmed plan, in that to do so would violate § 1322(b)(2) by impermissibly modifying its rights as a holder of a mortgage secured only by the Debtor's principal residence, but should allow the mortgagee relief from the stay in order to foreclose its interest in the residential real estate. Citizens cites, *In re Nicholson,* 70 B.R. 398 (Bankr.D.Colo 1987) and *In re Ellis,* 60 B.R. 432 (9th Cir.B.A.P.1985) in support of its position and tries to distinguish *In re McCollum,* 76 B.R. 797 (Bankr.D.Ore.1987). The Debtor's response filed on May 29, 1990 also refers this court to *In re McCollum,* and urges that the court allow the cure of the post-pe-

tition arrearage which allegedly resulted from the Debtor's hospitalization for the treatment of lip cancer subsequent to the confirmation of the second amended plan on July 25, 1990, and the Debtor has a $7,000.00 equity cushion in the subject property.

### III.

### *Conclusions of Law*

The post-confirmation modification of a chapter 13 plan must comply with section 1329 of the Code. This section states:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

(2) The plan as modified becomes the plan unless, after notice and hearing, such modification is disapproved.

(c) A plan modified under this section may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

Thus, pursuant to this section, the debtor may, subject to court approval, modify a chapter 13 plan "after confirmation, but before the completion of payments under a plan."

The legislative history to § 1329 in the form of the House Report states as follows:

After confirmation but before the completion of payments, the debtor may request a modification of the plan, to increase or reduce payments under the plan for a particular class, to extend or reduce the time for payments or to alter the amount of distribution to a creditor whose claim is provided for in the plan, to the extent necessary to take account of any payment of his claim other than under the plan.

Subsection (b) specifies that the normal provisions governing the plan and pre-confirmation modification apply to post-confirmation modification.

In applying the standards of proposed 11 U.S.C. 1325(a)(4) to the confirmation of a modified plan, "the plan" as used in that section will be the plan as modified under this section, by virtue of the incorporation by reference into this section of proposed 11 U.S.C. 1323(b). Thus, the application of the liquidation value test must be redetermined at the time of the confirmation of the modified plan. The confirmation of a plan modified under this section requires court approval only if a hearing is requested. Otherwise, the general rules governing "after notice and a hearing" will apply.

Subsection (c) places the same three year limit on the period of payments under the modified plan as is imposed on the original plan. The court is permitted, for cause, to approve a longer period, up to five years. (H.R.Rep. No. 595, 95th Cong. 1st Sess. 431 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6386–87).

The Senate Report states as follows:

At any time prior to the completion of payments under a confirmed plan the plan may be modified, after notice and hearing, to change the amount of payments to creditors or a particular class of creditors and to extend or reduce the payment period. A modified plan may not contain any provision which could not be included in an original plan as pre-

scribed by section 1322. A modified plan may not call for payments to be made beyond four years as measured from the date of the commencement of payments under the original plan. (S.Rep. No. 989, 95th Cong., 2d Sess. 143 (1978), U.S.Code Cong. & Admin.News 1978, p. 5929).

Finally, the Report of the Committee on the Judiciary, House of Representatives, to accompany H.R.Rep. No. 95–595, 95th Cong., 1st Sess. (1977) states as follows:

> If a problem arises in the execution of the plan, the bill permits modification of the plan, either through a scaling down of payments, a temporary moratorium, or an extension of time for performance. If the problems, such as a natural disaster, a long-term layoff, or family illness or accidents with attendant medical bills, are severe enough that modification is impracticable, the debtor's inability to make further payments is due to circumstances for which he should not justly be held accountable, and if his creditors have already received at least what they would have if the debtor had opted for straight bankruptcy, then the court may terminate performance under the plan and grant the debtor his discharge notwithstanding incomplete performance.

*Reprinted,* in Appendix 2, Collier on Bankruptcy, *Legislative History,* p. 125 (L. King 15th ed.).

Colliers describes the context in which debtors seek post-confirmation modification of their confirmed plans:

> Chapter 13 debtors often encounter circumstances during the extension period which were unforseen at the time of confirmation. Further persistent deterioration in a debtor's financial condition after confirmation usually leaves only four courses of action open to the debtor. The debtor may convert the case to a chapter 7, apply for a hardship discharge under section 1328(b), dismiss the case, or modify the chapter 13 plan in response to prevailing conditions. A debtor is not eligible for discharge relief under section 1328(b) in circumstances where a post-

confirmation modification of the plan is practicable.

> \* \* \* \* \* \*

> At any time before the completion of payments, after notice and a hearing, a confirmed chapter 13 plan may be modified by the debtor in certain respects, subject to compliance with all provisions governing the duration, contents and acceptance of a plan, as well as satisfaction of the criteria for confirmation. The plan as modified becomes the plan unless it is disapproved by the court after notice and a hearing. The submission of specifications as to the terms of a confirmed plan does not constitute a modification.

> The debtor may wish to modify the plan for any of a number of reasons. *A debtor may fall behind on postpetition mortgage payments and then seek to modify the plan to provide for a cure of the postpetition default.* The debtor's income may decrease, necessitating a reduction in payments. The debtor may wish to increase the amount or number of payments in order to provide for a post-petition claim, or to decrease payments to a secured creditor due to a payment to the creditor outside the plan or a surrender of collateral to the creditor which renders the creditor unsecured.

> However, section 1329 does not require the debtor to show cause to modify the plan. Because chapter 13 is completely voluntary, the debtor may propose any modified plan that satisfies the requirements of chapter 13. Twenty days notice of the proposed modification must be given to the trustee and to all creditors or, depending on local rules and practice, at least to all creditors adversely affected by the modification. If no party objects to the modification, after notice and an opportunity for a hearing, the modified plan becomes the confirmed plan.

> *The trustee or a party whose rights are adversely affected by the modification may object to it* on the grounds that the modification renders the plan out of compliance with the requirements for plan confirmation. *But such parties may not raise issues as to aspects of the*

*plan which have not changed, or issues which could have been raised at the confirmation hearing. The confirmed plan is res judicata as to all such issues.*

5 Collier on Bankruptcy ¶ 1329.01[1][a], pp. 1329-2-4 (15th ed. 1990). (Footnotes omitted) (Emphasis supplied).

This Court noted as follows in *In re Guy*, 101 B.R. 961 (Bankr.N.D.Ind.1988):

A Federal Court must apply the same issue preclusive effect to state court judgments, which would be given in courts of the state from which they emerged and can give neither less nor more preclusive effect than would those state courts. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274, *rehg. den.* 471 U.S. 1062, 105 S.Ct. 2127, 85 L.Ed.2d 491, *on remand* 628 F.Supp. 918; *Kirk v. Board of Educ. of Bremen Community High School, Dist. No. 228, Cook County, Illinois*, 811 F.2d 347 (7th Cir.1987); *Cook County v. Mid–Con Corp.*, 773 F.2d 892 (7th Cir.1985) (applying state preclusion law as to effect of state court judgment based on federal statute).

However, because the prior litigation here was brought in a federal court, the federal rule of collateral estoppel or issue preclusion would apply rather than the state standards of collateral estoppel or claim preclusion. *Fireman's Fund Ins. Co. v. International Market Place*, 773 F.2d 1068 (9th Cir.1985); *Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860 (5th Cir.1985). *Cf. In the Matter of Energy Cooperative*, 814 F.2d 1226, 1230–1231 (7th Cir.1987) (applying the federal rule of *res judicata* or claim preclusion where prior litigation was brought in federal court, *Citing, Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593, whereby the Court applied the "operative facts" or "same transaction" test to define "cause of action" and holding that "once a transaction has caused injury, all claims arising from

that transaction must be brought in one suit or lost.").
*Id.* at 974.

■ The preclusive effect of the prior decision of a bankruptcy court is determined under federal *res judicata* standards. *McClain v. Apodaca*, 793 F.2d 1031, 1033 (9th Cir.1986).

The United States Supreme Court has enunciated conditions required for application of the doctrines of *res judicata* and collateral estoppel as follows:

A fundamental precept of common-law adjudication, embodies in the related doctrines of collateral estoppel and *res judicata*, is that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies ..." Under *res judicata*, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. Application of both doctrines is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions. To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.

*Montana v. United States*, 440 U.S. 147, 153–154, 99 S.Ct. 970, 973–974, 59 L.Ed.2d 210 (1979) (citations and footnote omitted).

The Court of Appeals for the Seventh Circuit in the case of *Gray v. Lacke*, 885 F.2d 399 (7th Cir.1989), stated as follows:

Under the doctrine of res judicata (claim preclusion), a final judgment on the merits of an action bars further claims by the parties or their privies

based on that same action. *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Beard v. O'Neal,* 728 F.2d 894, 896 (7th Cir.), *cert. denied,* 469 U.S. 825, 105 S.Ct. 104, 83 L.Ed.2d 48 (1984). Moreover, res judicata bars not only those issues that the parties actually litigated, but also any issue which the parties could have raised in the prior action. *Whitley v. Seibel,* 676 F.2d 245, 2149 n. 7 (7th Cir.), *cert. denied,* 459 U.S. 942, 103 S.Ct. 254, 74 L.Ed.2d 198 (1982); *Harper Plastics, Inc. v. AMOCO Chems. Corp.,* 657 F.2d 939, 945 (7th Cir.1981). In order for res judicata to apply to this suit, the appellees must show the following three elements: (1) a final judgment on the merits in Gray's prior suit against Dane County; (2) an identity of the cause of action in her suit against Dane County and the present action; and (3) an identity of parties or their privies in Gray's prior suit and the instant action. *See Shaver v. F.W. Woolworth Co.,* 840 F.2d 1361, 1364 (7th Cir.), *cert. denied,* 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988); *Brown v. J.I. Case Co.,* 813 F.2d 848, 854 (7th Cir.), *cert. denied,* 484 U.S. 912, 108 S.Ct. 258, 98 L.Ed.2d 215 (1987).

*Id.* at 404–05.

The Court of Appeals for the Seventh Circuit in the case of *Crop–Maker Soil Services v. Fairmount State Bank,* 881 F.2d 436 (7th Cir.1989), also stated as follows:

Generally, the *res judicata* doctrine serves the interests of judicial economy and finality in disposing disputes by barring both the parties to a judgment and their privies from relitigating the identical cause of action. *Durhan v. Neopolitan,* 875 F.2d 91, 92, 93–94 (7th Cir.1989). *Res judicata* thus precludes Crop–Maker from "splitting" its claim. Different causes of action deriving from the same incident are regarded as a single claim in recognition of the economics in combining the various theories of liability in a single suit.

*Res judicata* ensures the finality of decisions. Under *res judicata,* "a final judgment on the merits bars fur-

ther claims by parties or their privies based on the same cause of action." (Citation omitted.) *Res judicata* prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding. (Citations omitted.) *Res judicata* thus encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes.

*Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979).

The preclusive effect of the federal res judicata doctrine bars not only those issues which actually were decided in a prior action but also any issues which could have been raised. *Shaver v. F.W. Woolworth Co.,* 840 F.2d 1361, 1364 (7th Cir.1988). This court will follow the traditional doctrine of *res judicata* if the elements of *res judicata* are met. *Id.* at 1365. Those elements are (1) a final judgment on the merits in a prior action; (2) the identity of the cause of action in both the prior and subsequent suits; and (3) the identity of parties or privies in these suits. *Id.* at 1364. This is a rule of fundamental public policy, well established in the public interests that there be an end to litigation. *Id.* at 1364–65.

The doctrine of *res judicata* applies in the bankruptcy context. *Cf. Felsen,* 442 U.S. at 132, 138, 99 S.Ct. at 2204, 2212. Public policy supports *res judicata* here because most bankruptcies include disputes between creditors over who gets paid. Sometimes the results are harsh and courts seem to focus upon technicalities. *In the Matter of Met–L–Wood Corp.,* 861 F.2d 1012, 1019 (7th Cir.1988).

\*    \*    \*    \*    \*    \*

*Res judicata,* or claim preclusion, operates as a bar to litigants if there has been final judgment upon the merits in an earlier action, and there is an identity of the cause of action and of the parties in the two suits. *Lee v. City of Peoria,* 685 F.2d 196, 199 (7th Cir.1982). *A prior suit will be conclusive not only as to*

*those matters litigated, but also regarding any other admissible matter which could have been resolved. Magnus Electronics, Inc. v. La Republica Argentina,* 830 F.2d 1396, 1400 (7th Cir.1987).

Public policy supports *res judicata* generally, but in the bankruptcy context in particular.

*Id.* at 438–440. (Emphasis supplied).

It is clear that two of the three elements necessary for the application of the federal common law rule of *res judicata* are present as to the confirmed plan, in that (1) there was a final judgment on the merits in a prior "action" (i.e. the order confirming the Debtor's Second Amended Plan), and (2) identity of the parties or their privies in both suits (i.e. the Debtor and Citizens are parties to both the Second Amended Plan as confirmed, and to the Second Petition to Amend the Plan Post-confirmation).

[2, 3] Here, the confirmation order as to the Second Amended Plan in this case was in essence by "default" as no objection was filed by Citizens to the Debtor's second amended plan. It is well-established that *res judicata* principles apply even though the judgment is taken by default. *Dillard v. Security Pacific Brokers, Inc.,* 835 F.2d 607 (5th Cir.1988); *Young Engineer's Inc. v. U.S. Intern, Trade Comm'n,* 721 F.2d 1305 (Fed.Cir.1983); *Matter of Bloomer,* 32 B.R. 25 (Bankr.W.D.Mich.1983); *In re Bystrek,* 17 B.R. 894 (Bankr.E.D.Pa.1982).[1]

The question remains on the third element, i.e. the identity of the "cause of action" in the prior "suit" and the subsequent "suit".

In applying the federal definition of "cause of action", the Court in *Matter of Energy Co-Op, Inc.,* 814 F.2d 1226, 1231 (7th Cir.1987), noted that when the prior litigation and the subsequent litigation arise out of the same core of operative facts, i.e. both claims arose out of the same transaction, then the two suits involve the same cause of action and *res judicata* is applicable.

The Court in *Car Carriers, Inc. v. Ford Motor Co.,* 789 F.2d 589 (7th Cir.1986), endorsed the approach of Section 24 of the *Restatement (Second) of Judgments* (1982), where it stated that "once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or lost." *Id.* at 593. The *Car Carriers* court also stated as follows:

an unsuccessful party ought not be able to "frustrate the doctrine of *res judicata* by cloaking the same cause of action in the language of a theory of recovery untried in the previous litigation." 657 F.2d at 945. Therefore, the "right-duty" approach should not be used as a substitute for the "same transaction" test absent compelling circumstances and a clear showing that such a substitution will not undermine the policies of *res judicata.*

*Id.* at 594–95 (*Quoting, Harper Plastics,* 657 F.2d at 945).

In terms of a Chapter 13 confirmation order, this translates into whether the factual issues that are sought to be resolved by the Debtor's second, post-confirmation petition to amend the confirmed plan were either actually litigated and decided by the original Confirmation Order, or if not, whether the original Confirmation Order relates to any admissible matter that *could* have been litigated and decided thereby.

The order confirming the Debtor's Second Amended Plan dated July 25, 1989 found, among other things, that

1. That the plan complies with the provision of Chapter 13, and with the oth-

---

1. Bankruptcy Rule 9001 "General Definitions" defines a "Judgment" at B.R. 9001(7) as "any appealable order."; Bankruptcy Rule 9002 relating to "Meanings of Words in the Federal Rules of Civil Procedure When Applicable to Cases Under the Code", defines "Judgment" at B.R. 9002(5) as "any order appealable to an appellate court." Bankruptcy Rule 7054(a) which applies Fed.R.Civ.P. 54(a) defines a "judgment" to include a decree and any order from which an appeal lies. Bankruptcy Rule 9014 applies Bankr.R. 7054 to contested matters also. The confirmation order entered on July 25, 1989 confirming the Debtor's Second Amended Plan falls within the foregoing definitions. *See, In re Moody,* 817 F.2d 365, 366–68 (7th Cir.1987); *In re Cash Currency Exchange, Inc.,* 762 F.2d 542, 546–48 (7th Cir.1985), *cert. den.* 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232.

er applicable provisions of title 11 of the United States Code. (§ 1325(a)(1)).

2. That the plan was proposed in good faith and not by any means forbidden by law. (§ 1325(a)(3)).

3. That the Debtor will be able to make all of the payments under the plan and comply with the plan. (§ 1325(a)(6)).

In addition, implicit in these findings were that the confirmed second amended plan complied with the following subsections of § 1322(b) regarding the contents of the Debtor's second amended plan:

(b) Subject to subsections (a) and (c) of this section, the plan may—

\*        \*        \*        \*        \*        \*

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

(3) provide for the curing or waiving of any default;

\*        \*        \*        \*        \*        \*

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

Finally, 11 U.S.C. § 1327 which governs the Effect of Confirmation states as follows:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

This Court in *In re Glow*, 111 B.R. 209 (Bankr.W.D.Ind.1990), stated as follows:

The confirmation of a plan binds both the debtor and his creditors to the plan provisions. *United States of America v. Norton*, 717 F.2d 767 (3rd Cir.1983); *Matter of Gregory*, 705 F.2d 1118 (9th Cir.1983); *In re Wickersheim*, 107 B.R. 177, 181 (Bankr.E.D.Wis.1989); *Matter of Grogg Farms, Inc.*, 91 B.R. 482, 485 (Bankr.N. D.Ind.1988); *In re Mikrut*, 79 B.R. 404, 406 (Bankr.W.D.Wis.1987); *In re Kitchen*, 64 B.R. 452, 454 (Bankr.D.Mont. 1986); *Matter of Abercrombie*, 39 B.R. 178, 179 (Bankr.N.D.Ga.1984).

Once a plan is confirmed neither a debtor nor a creditor can assert rights that are inconsistent with its provisions. *Matter of Grogg Farms, Inc.*, 91 B.R. at 485, *supra; In re Evans*, 30 B.R. 530, 531 (B.A.P. 9th Cir.1983).

An order of confirmation constitutes *res judicata* as to all issues that could have and should have been raised pertaining to the plan. *In re Patterson*, 107 B.R. 576, 578–79 (Bankr.E.D.Ohio 1989); *In re Wickersheim*, 107 B.R. at 181, *supra; Matter of Grogg Farms, Inc.*, 91 B.R. at 485, *supra; In re Bonanno*, 78 B.R. 52, 55 (Bankr.E.D.Pa.1987); *In re Earley*, 74 B.R. 560, 562 (Bankr.C.D.Ill. 1987); *In re Kitchen*, 64 B.R. 452, 454–55 (Bankr.D.Mont.1986); *In re Lewis*, 64 B.R. 415 (Bankr.E.D.Pa.1986) *aff'd.* 85 B.R. 719 (E.D.Pa.1988); *In re Evans*, 30 B.R. 530, 531–32 (B.A.P. 9th Cir.1983); *In re Russell*, 29 B.R. 332, 335 (Bankr.E. D.N.Y.1983); *Matter of Abercrombie*, 39 B.R. 178, 179 (Bankr.N.D.Ga.1984); *In re Clark*, 38 B.R. 683, 684–85 and N. 3 (Bankr.E.D.Pa.1984); *Matter of Willey*, 24 B.R. 369, 374–75 (Bankr.E.D.Mich. 1982); *Matter of Risser*, 22 B.R. 868, 870 (Bankr.S.D.Cal.1982); *Matter of Hackney*, 20 B.R. 158, 159 (Bankr.D.Idaho 1982); *In re Flick*, 14 B.R. 912, 918 (Bankr.E.D.Pa.1981); *Matter of Lewis*, 8 B.R. 132, 137 (Bankr.D.Idaho 1981).

Absent the showing of fraud, failure of a plan to comply with the requirements of the Bankruptcy Code as to confirmation such as found in § 1325, when there has been no timely objection to the plan, does not constitute grounds to set aside the order of confirmation. This important legal principle was discussed at some length by the court in *In re Szostek*, 886 F.2d 1405 (3rd Cir.1989). There the Court stated as follows:

\* \* \* \* \* \*

The finality of confirmed plans was discussed by the Supreme Court in *Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938). At issue in *Stoll* was a corporate debtor's plan which included cancellation of a guaranty to pay a bond. Prior to confirmation, there had been no objections to the plan. After confirmation, however, the creditor filed an action in state court to recover on the guaranty. The Supreme Court held that the finality of the bankruptcy confirmation order barred the creditor from litigating its claim.

\* \* \* \* \* \*

Other courts of appeals have upheld the binding effects of a bankruptcy confirmation order. A creditor was bound by a plan that released the third party guarantor in *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir. 1987). The court stated that, regardless of whether the plan provision to release the guarantor was inconsistent with the bankruptcy laws or within the authority of the bankruptcy court, it was nonetheless included in the plan. Since the plan was confirmed without objection, nor was an appeal taken, the plan was not reviewable on its merits. 815 F.2d at 1050.

\* \* \* \* \* \*

Similarly, in *Matter of Gregory*, 705 F.2d 1118 (9th Cir.1983), the Court of Appeals for the Ninth Circuit held that the failure to raise an objection at the confirmation hearing, or to appeal from the confirmation order, should preclude an attack on the plan or any provision therein as being illegal in a subsequent proceeding. The court of appeals noted that the creditor's treatment seemed "grossly unfair" because of a zero-payment plan provision where the debtor, a convicted embezzler, owed $17,000 to his employer. Nonetheless, the court concluded, if a creditor ignores the bankruptcy proceedings, he does so at his peril. 705 F.2d at 1123.

*Id.* at 1408–1410. *See also, Goss v. Goss*, 722 F.2d 599 (10th Cir.1983) ("Consequences of a final unappealed judgment on the merits [are not] altered by the fact the judgment may have been wrong.", *quoting Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981); *In re Sanders*, 81 B.R. 496 (Bankr.W.D.Ark.1987) (confirmed plan *res judicata* so long as court is competent to preside over matters at issue, even erroneous determination as to extent of court's jurisdiction is *res judicata*, and not subject to collateral attack); *In re Emergency Beacon Corp.*, 84 B.R. 329 (S.D.N.Y.1988) (confirmation order not void even though erroneous; in order for order to be void court must have lacked subject matter or personal jurisdiction or must have acted without due process of law, *citing Swift and Co. v. United States*, 276 U.S. 311, 48 S.Ct. 311, 72 L.Ed. 587 (1928); *In re Blanton Smith Corp.*, 81 B.R. 440 (M.D.Tenn. 1987) (order confirming plan would not be set aside even if contained error of law where order was neither void nor a mistake, and there was no allegation of fraud).

*Id.* at 224–26.

Thus, all issues that were actually litigated or could have been litigated at the time the Debtor's second amended plan was confirmed are now barred by the doctrine of *res judicata*. This would include any factual issues that were in fact raised or could have been raised pertaining to the plan such as whether the Debtor's health would impact on his ability to make his plan payments to Citizens. However, if the health

problems now allegedly impairing the Debtor's ability to make his payments under the confirmed plan were not in existence at the time of confirmation, or could not have been reasonably anticipated at the time the plan was confirmed, and they are substantial in nature, they are not *res judicata* as to any such issues in passing on whether the Debtor's plan should be confirmed post-petition pursuant to § 1329.

This Court believes that the Court in *In re Arnold*, 869 F.2d 240 (4th Cir.1989), correctly stated the law regarding the interrelationship between the *res judicata* effect of a confirmed plan pursuant to § 1325 and post-confirmation modification thereof pursuant to § 1329, although, the facts were not analogous. In *Arnold*, an unsecured creditor filed a post-confirmation motion to increase the Debtor's monthly payments because it turned out that his actual post-confirmation income was substantially higher than that at the time of confirmation. The plan as originally confirmed provided for $800.00 monthly payments over 36 months. The Bankruptcy Court, in light of the Debtor's higher income, granted the creditor's motion and modified the plan to increase the monthly payment to $1,500.00 over 326 months. The Court of Appeals affirmed. The *Arnold* Court stated as follows:

> Although § 1329(a) does not explicitly state what justifies such a modification, it is well-settled that a substantial change in the debtor's financial condition after confirmation may warrant a change in the level of payments. *See Education Assistance Corp. v. Zellner*, 827 F.2d 1222, 1226 (8th Cir.1987); *In re Fitak*, 92 B.R. 243, 248–50 (Bankr.S.D.Ohio 1988), *citing* Oversight Hearings on Personal Bankruptcy Before the Subcommittee on Monopolies and Commercial Law of the House Committee on the Judiciary, 97th Cong., 1st Sess. 181, 215–16, 221 (1981–82); *In re Gronski*, 86 B.R. 428, 432 (Bankr.E.D.Pa.1988); *In re Owens*, 82 B.R. 960, 966 (Bankr.N.D.Ill.1988); *In re Moseley*, 74 B.R. 791, 799 (Bankr.C.D. Cal.1987); *In re Tschiderer*, 73 B.R. 133, 134 (Bankr.W.D.N.Y.1987). *See also*, 5

*Collier on Bankruptcy*, ¶ 1329.01[b] at 1329–4 (15th ed. 1988).

\* \* \* \* \* \*

The doctrine of *res judicata* bars an increase in the amount of monthly payments only where there have been no unanticipated, substantial changes in the debtor's financial situation. *Fitak*, 92 B.R. at 249–50; 5 *Collier on Bankruptcy*, ¶ 1329.01[b] at 1329–4 (15th ed. 1988). *See also, Moseley*, 74 B.R. at 799. Here, there has been a substantial change (from $80,000 to $200,000 per year) that must be considered unanticipated. If it was anticipated, Arnold's expectations should have been disclosed to the bankruptcy court before the original 36 month, $800 per month plan was confirmed.

We adopt the objective test applied in *Fitak* to determine whether a change was unanticipated: "whether a debtor's altered financial circumstances could have been *reasonably anticipated* at the time of confirmation by the parties seeking modification." 92 B.R. at 250 (emphasis in original). Although it was reasonable to expect Arnold's income to fluctuate from year to year because it relied so heavily on sales commissions, Weast should not be expected to have anticipated a $120,000 jump in his income in only two years. *Res judicata* thus presents no bar to an upward adjustment of Arnold's monthly payment to take into account the unanticipated and substantial improvement in his financial condition.

*Id.* at 242–43. *Accord, In re Walker*, 114 B.R. 847, 849–50 (Bankr.N.D.N.Y.1990); *In re Lynch*, 109 B.R. 792, 796 (Bankr.W.D. Tenn.1989); *In re Baldwin*, 97 B.R. 965, 966–67 (Bankr.N.D.Ind.1989); *In re Frost*, 96 B.R. 804, 808 (Bankr.S.D.Ohio 1989); *In re Gronski*, 86 B.R. 428, 431–32 (Bankr.E. D.Pa.1988); *In re Szostek*, 93 B.R. 399, 406 (Bankr.E.D.Pa.1988); *In re Taylor*, 99 B.R. 902, 904 (Bankr.C.D.Ill.1989); *In re Fitak*, 92 B.R. 243, 249–50 (Bankr.S.D.Ohio 1988); *In re Moseley*, 74 B.R. 791, 799–800 (Bankr.C.D.Cal.1987); *In re DeMoss*, 59 B.R. 90, 95 (Bankr.W.D.La.1986); *Cf. In re Evans*, 77 B.R. 457 (E.D.Pa.1987) (Debtor

could modify plan even though he had not encountered post-confirmation extraordinary circumstances).

■ *Res Judicata* is a two-edged sword, and to the extent the confirmation order is binding on both the Debtor and the creditors it is *res judicata* as to both.

The Court in *In re Ellis*, 60 B.R. 432 (B.A.P. 9th Cir.1985), addressed the issue of the extent to which Section 1327(a) affects relief from stay based on a post-confirmation default. There, the Court correctly stated as follows:

> Under subsection 1327(a), the provisions of a confirmed plan bind the debtor and each creditor, whether or not such creditor has objected to, has accepted, or has rejected the plan. We previously held that subsection 1327(a) barred post-confirmation relief from stay based on grounds arising *before* confirmation. *In re Evans*, 30 B.R. 530 (Bankr. 9th Cir. 1983). *Evans* was limited to facts "absent a post-confirmation default in carrying out the plan." *Id.* at 531. In *Evans*, we concluded that there was a *res judicata* effect as to the issues that could have been decided at confirmation, including "adequate protection, lack of equity, and necessity for successful reorganization." *Id.* Post-confirmation defaults would not be considered at the confirmation hearing and are therefore not subject to *res judicata* flowing from the order.

*Id.* at 434.

■ However, to the extent that the confirmed plan may be modified pursuant to § 1329, notwithstanding § 1327 and the doctrine of *res judicata*. The Debtor, as well as his creditors, may seek post-confirmation relief.

■ It is often difficult to adjust the tensions that invariably arise between § 1327 in conjunction with the doctrine of *res judicata*, and the rights afforded under § 1329 as to post-confirmation modifications. However, the general rule is that a plan can be modified post-confirmation where the movant can show unanticipated and substantial changes in the debtor's condition post-confirmation which directly impacts on the debtor's ability to perform under the terms of the confirmed plan where those issues raised as a basis for a post-confirmation modification were not in existence or could not have been reasonably anticipated at the time the plan was originally confirmed. If there are not any substantial and unanticipated changes post-confirmation, the doctrine of *res judicata* bars any post-confirmation modification. Clearly, what constitutes a substantial change is a fact issue that must be determined on a case-by-case basis.

■ A substantial change in circumstances does not necessarily require an extraordinary or catastrophic change in circumstances. The Court stated in *In re Davis*, 34 B.R. 319 (Bankr.E.D.Va.1983) as follows:

> The legislative history of Section 1329 does not indicate that the debtor has the burden of showing a grievous change in circumstances to be entitled to modify the plan. Congress noted that the Bankruptcy Reform Act provided for post-confirmation modification of a Chapter 13 plan "[i]f a problem arises in the execution of the plan...." H.Rep. No. 95–595 p. 125 Bankr.L.Ed., Leg.Hist. § 82:4 (legislative history mentions catastrophic circumstances only when referring to "hardship discharge" allowed under 11 U.S.C. Section 1328(b)).

*Id.* at 319–20. *Accord: In re Evans*, 77 B.R. at 459, *supra*.

■ In addition, this Court agrees with the adoption by the *Arnold* court of the objective test set out in *Fitak*, 92 B.R. at 249–50 to determine whether a change is considered unanticipated. That test is, "whether a debtor's altered financial circumstance could have been *reasonably anticipated* at the time of confirmation by the parties seeking modification." (Emphasis in original).

In the specific area of post-confirmation modification to cure arrearages or defaults, not surprisingly, the results of the various courts have been not uniform. *See, In re Hollis*, 105 B.R. 1003, 1006–07 (N.D.Ala. 1989) (debtor cannot use post-confirmation

modification to cure post-confirmation arrearages or to modify plan to make payments on a mortgage through trustee where original plan called for direct payments to creditor); *In re Sensabaugh,* 88 B.R. 95, 96 (Bankr.E.D.Pa.1988) (to allow modification to cure post-confirmation defaults within reasonable time subverts intent of § 1322(b)(5)); *In re Mannings,* 47 B.R. 318, 320–22 (Bankr.N.D.Ill.1985) (debtor can modify plan to cure a post-petition mortgage arrearage when the debtor adequately explains the post-confirmation default); *In re McCollum,* 76 B.R. 797, 800–01 (Bankr.D.Or.1987) (Bankruptcy Code provision permitting plan to provide for curing of defaults is not limited to prepetition defaults or modify rights of holder of claims secured only Debtor's marital residence); *In re Davis,* 110 B.R. 834, 835–37 (Bankr.W.D.Tenn.1989) (debtor permitted to cure post-confirmation default in home mortgage payments); *In re Gadlen,* 110 B.R. 341, 343–45 (Bankr.W.D.Tenn.1990) (post-confirmation modification to cure post-petition defaults possible, but may not change terms of mortgage payments).

██ Any proposed post-confirmation modification of a plan that effects a claim that is secured only by a lien on the debtor's principal residence must take §§ 1322(b)(2), 1322(b)(3), and 1322(b)(5) into consideration as § 1329(b)(1) expressly requires a compliance with § 1322(b). However, although § 1322(b)(2) precludes modification of a claim secured only by the Debtor's principal residence, §§ 1322(b)(3) and (5) are not mandatory as they relate to the curing of any default only, as § 1322(b), subject to §§ 1322(a) and (c), states the plan "may" include such plan provisions. Thus, a plan may be confirmable (without this court so holding) even if all defaults are not cured, if the secured creditor is otherwise protected, i.e. the regular monthly payment is not modified and is maintained, there is an adequate equity cushion, and all taxes and insurance are paid. The end result might be that when all other plan payments are completed, the Debtor receives his discharge, the case is closed, and the stay is vacated, if the Debtor has not cured all arrears by that time,

either pre or post petition or post confirmation, the secured creditor would then be free to accelerate the debt, and proceed to foreclosure in the state court as the Debtor's plan would not have completely cured or "deaccelerated" any and all defaults at the end of the plan period.

Bankruptcy Judge Kennedy faced a similar situation where the debtor defaulted on their payments under a confirmed plan in *In re Davis,* 110 B.R. 834, *supra.* Judge Kennedy held that a Chapter 13 debtor, who proposes to pay his entire post-confirmation arrearage within the term of the plan, and maintain ongoing monthly contractual payments on a mortgage lien on the debtor's primary residence, along with interest on the default at the contract rate, established good cause to permit the cure. The court further held that the cure of the post-confirmation default was not an impermissible modification of the rights of the mortgagee in violation of § 1322. The court noted:

As the legislative history underlying Chapter 13 makes clear, if problems such as family illness, medical bills and layoff make execution of a confirmed plan impracticable, the Bankruptcy Code even permits a temporary moratorium of payments. H.Rep. No. 595, 95th Cong., 2d Sess. 125, reprinted in 1978 U.S.Code Cong. & Adm.News 5787, 5963, 6086. Here, Mr. and Mrs. Davis do not seek a moratorium of payments or modifications of the terms of the subject deed of trust. They merely and only seek to amend their confirmed chapter 13 plan to allow for an opportunity to cure a post-confirmation economic default while maintaining ongoing contractual payments and fully recognizing the contractual rate of interest, maturity date, etc.

\*     \*     \*     \*     \*     \*

In the instant proceeding Mr. and Mrs. Davis propose to pay the full post-confirmation arrearage well within the statutory term of the plan and maintain ongoing contractual payments. This is reasonable under the circumstances. In addition to paying the ongoing monthly

contractual payments, Mr. and Mrs. Davis propose to pay the amount in default with a 10% interest factor, the contract rate, to compensate for Leader Federal's lost opportunity costs and give present value on the post-confirmation arrearage. *In re Colegrove,* 771 F.2d 119 (6th Cir.1985). By virtue of § 1322(c), the original plan may not exceed five years. Mr. and Mrs. Davis proposed to pay 100% of all their creditors. There is a large equity cushion in the Davis home. The Standing Chapter 13 Trustee will serve as the disbursing agent under the amended plan. The plan payments will be through an employer deduction. § 1325(c). Leader Federal's ongoing contractual monthly payment, interest rate, maturity date, etc. are not sought to be modified. Mr. and Mrs. Davis, as stated, only propose to cure an economic default. § 1322(b)(5). Their request is not unreasonable or inequitable under a totality of the particular facts and circumstances. The Standing Chapter 13 Trustee supports the position of Mr. and Mrs. Davis under these circumstances.

Mr. and Mrs. Davis have not filed any prior bankruptcy cases. They seem very worthy of an opportunity to save their home from foreclosure and pay all their creditors in full. Leader Federal will be compensated for its lost opportunity costs arising out of the post-confirmation default. Sufficient good cause exists under a totality of all the facts and circumstances and applicable law to grant the instant motion seeking to cure the post-confirmation defaults.

Section 1322(b)(5) is not specifically limited to pre-petition defaults. In fact, § 1322(b)(5) provides for the curing of "any defaults." A post-confirmation curing under § 1322(b)(5) does not, ipso facto, constitute an impermissible modification of Leader Federal's rights in contravention of § 1322(b)(2). As noted, the terms of the subject deed of trust regarding the contractual interest rate, future monthly installment payments, maturity date, etc. remain unchanged. The rehabilitative purpose of chapter 13 should not be ignored. The proposed amended plan pursuant to § 1329 of Mr. and Mrs. Davis seeking to cure the post-confirmation economic default complies with the provisions of §§ 1322 and 1325 and thereby fosters the rehabilitative goals of chapter 13 by allowing debtors in appropriate cases to save their homes from foreclosures due to changed circumstances and concomitantly satisfies and protects creditors' interests under court supervised original and amended plans. The instant request of Mr. and Mrs. Davis to cure a default is not tantamount to an impermissible modification, rather as Judge McRae said in *In re Bailey,* [Case No. 83–20623–K (W.D. Tenn.1986)] *supra,* it is an attempt to cure the post-confirmation default in accordance with § 1322(b)(5). Mr. and Mrs. Davis merely need some time to bring their post-confirmation arrearages current while maintaining ongoing payment.

*Id.* 110 B.R. at 835–37.

In *In re McCollum,* 76 B.R. 797, *supra,* the court faced a confirmed chapter 13 plan where the debtors had fallen behind nine months in their mortgage payments. The creditor moved for relief from the automatic stay, and also objected to the debtors' amended plan which proposed to bring the default current within the term of the plan, and continue making monthly payments as required by their trust deed. The case the court noted that the reasonable value of the property was about $30,000.00, and the balance due the creditor was $16,111.59, resulting in an equity cushion of approximately $14,000.00. The court noted:

The starting point for the analysis is the goal of chapter 13 to rehabilitate the debtor while protecting the creditor's interests. To further that goal, § 1329 provides for modification of a plan after confirmation to take into account changed circumstances. *See* 11 U.S.C. § 1329(a). The determination of whether the proposed modification should be approved is based upon the circumstances existing at the time of the proposed modification. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 431 (1977), U.S.Code

Cong. & Admin.News 1978, p. 5787. Section 1329(b) requires that a modified plan meet the requirements of §§ 1322(a), (b) and (c) (sic) [§ 1323(c)] and 1325(a).

Under § 1322(b)(5) a plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending * * *." It could be argued that § 1322(b)(5) applies only to pre-petition defaults. However, the statute is not specifically limited to pre-petition defaults and in fact provides for curing of "any defaults."

Nor does the inclusion of such a provision curing post-confirmation defaults in a plan constitute a modification of the creditor's rights in contravention of § 1322(b)(2). The terms of the trust deed remain unchanged as to payment of future installments. All Post-confirmation defaults must be cured. What may be a reasonable time to cure a default will depend upon the circumstances in an individual case. In no event may the period of time to cure the defaults continue beyond the length of the term of the plan.

*Id.* 76 B.R. at 800–01.

The district court affirmed a bankruptcy court's decision to allow the cure of a post-confirmation default under appropriate circumstances in *In re Bailey,* 111 B.R. 151 (W.D.Tenn.1988). The District Court in *Bailey* stated:

This was not a modification, rather it was an attempt to cure the post confirmation arrearages. Under 11 U.S.C. § 1322(b)(5), 'the bankruptcy court may in the exercise of its equitable discretion give the debtor time in which to bring post petition arrearages current.' *In re Parker,* 46 B.R. 106, 108 n. 1 (Bankr.N. D.Ga.1985).

Even if the Bankruptcy Court order was interpreted as a modification of the Chapter 13 plan, there is law to suggest that in appropriate cases, Chapter 13 debtors may modify confirmed plans in order to pay off a post confirmation arrearage over the term of the plan. *See*

*In re Mannings,* 47 B.R. 318 (Bankr.N. D.Ill.1985).

*Id.* at p. 154.

The Bankruptcy Court in *In re Mannings,* 47 B.R. 318 (Bankr.N.D.Ill.1985) permitted the debtors to cure a post-confirmation default in their mortgage payments through a modification of their confirmed plan and thereby "cram down" the modification over the mortgagee's objection. The court described the process as follows:

This court's conclusion is premised in part upon the fact that in this situation, the debtor could apparently meet the criteria for refiling, including those set forth in section 109(f) of the Code. At least in cases like the present one, the court will allow a debtor situated similarly to the Mannings to amend a Chapter 13 plan to treat mortgage arrearages under the amended plan rather than force a refiling. Relevant considerations here include best interest of all creditors and the debtor, as well as judicial economy. (That is not to say that the court means to imply that it is utilizing the "best interest of creditors test" or "Balancing of interest tests." Those do not apply to the current facts.)

Fleet may have chosen the wrong set of facts upon which to proceed with this issue. Contrary to Fleet's assertion that the debtor made no showing of good faith; representations were made on the record which indicated that the Mannings had made some payments, and that regular payments were impossible because Mr. Mannings was injured and unemployed. Facts were also adduced to the effect that since he was again employed, he will be able to maintain current payments in the future.

*Id.* 47 B.R. at 321–22.

Bankruptcy Judge Brown required a debtor to establish "cause" as a requisite to permitting modification of a confirmed plan to provide for the payment of post-confirmation mortgage arrearages. *In re Gadlen,* 110 B.R. 341, *supra.* In *Gadlen,* Judge Brown adopted Judge Kennedy's analysis in *Davis, supra,* and noted that permitting a post-confirmation modification

does not impair the chapter 13 goal of rehabilitating debtors while protecting creditors' interests where changed circumstances require the modification. The court wrote:

This Court has previously recognized, in its own unpublished opinion, that § 1329 permits postconfirmation modification, and this Court had indicated that it would require strict compliance with § 1329 in that all affected creditors must be noticed. *See In re Lynch* and *In re Woods*, 109 B.R. 792 (Bankr.W.D.Tenn. 1989). In that opinion, this Court observed that 'the incurring of postpetition mortgage arrearages may present difficult problems for debtors and mortgage creditors as to whether those postpetition arrearages constitute a modification of the home mortgages in violation of § 1322(b)(2) or in violation of the requirements of § 1322(b)(5) that ongoing mortgage payments be maintained "while the case is pending."' *In re Lynch and Woods*, at p. 796. It is certainly true that in a given case, a debtor's attempted postconfirmation modification may not be justified as a change of circumstances but may instead be an attempt by the debtor to avoid the anti-modification provisions of § 1322(b)(2), and the bankruptcy court must conduct a judicial inquiry in each case to ascertain the real purpose behind an attempted postconfirmation modification.

As the *McCollum* Court observed, the inclusion of a plan modification provision curing postpetition defaults does not necessarily constitute a modification of the creditor's rights in contravention of § 1322(b)(2). As in *McCollum*, these debtors' modification does not alter the term of the original trust deed as to payment of future installments. *In re McCollum*, 76 B.R. at 800–801. If, on the other hand, a debtor attempted to modify basic terms of the original mortgage deed of trust, through a postconfirmation modification, § 1322(b)(2) would likely be offended and such a modification attempt should be rejected.

Here, the Court has examined the proof presented and finds that there was a change of circumstance in that the debtor, Mr. Gadlen, who has owned this home since 1984, and who has seen its market value rise to $50,000.00, according to his testimony, suffered personal and family problems causing financial difficulties around the time of the bankruptcy filing and thereafter. Mr. Gadlen has steady employment, having been with the same employer for eleven years, and the debtor, Mrs. Gadlen is also employed. Mr. Gadlen has suffered, however, a pay cut during the fall after his bankruptcy filing. A sufficient change in circumstance has been presented to explain why the debtors have become delinquent, postpetition, in their home mortgage payments. This is not to excuse the delinquency nor to say that the debtors may in the future freely fall behind in their mortgage payments, since a pattern of delinquency in the mortgage payments would violate the requirements of § 1322(b)(5) that ongoing payments be maintained "while the case is pending."

\*     \*     \*     \*     \*     \*

This Court is aware that some courts have held that the debtor may not utilize § 1329 to modify the plan so as to cure postpetition arrearages. *See e.g., In re Hollis*, 105 B.R. 1003 (N.D.Ala.1989) (mortgagee filed motion for relief from stay, debtor failed to respond and no § 1329 modification was sought); *In re Cotton*, 102 B.R. 891 (Bankr.D.Ga.1989) (debtor assumed mortgage postconfirmation); *In re Sensabaugh*, 88 B.R. 95 (Bankr.E.D.Va.1988) (material breach dictated dismissal under § 1307(c)(6)). However, after an examination of these opinions, this Court finds that their facts differ from the Gadlen facts, and this Court is not persuaded that a blanket rule prohibiting postconfirmation modification for the purpose of curing postpetition mortgage arrearages is either mandated or wise. The critics of such modification appear to find § 1322(b)(2) and (5) controlling, and this Court does not quarrel with the effect of those statutes. However, those statutes do not prohibit by their clear language, a postconfirma-

tion modification of this nature. They, coupled with § 1329, simply require the court to examine any postconfirmation modification to be certain that it complies with both § 1322(a) and § 1322(b), as well as § 1323(c) and § 1325(a). This Court has conducted such an examination and finds that the modification sought by the Gadlens does comply with the applicable Code sections.

*Id.,* 110 B.R. at pp. 344–45.

Citizen's reference to *Nicholson* is confusing in that the court in that case makes no mention of § 1329 in its discussion of its holding that permitting a Chapter 13 debtor to make adequate protection payments on a post-confirmation mortgage deficiency would conflict with the mandate of § 1322(b)(2) by altering the rights of the creditor contrary to the Bankruptcy Code. Where no modification of the confirmed plan is under consideration, this court would be inclined to agree with the Nicholson court; however, the facts of this case urge contrary considerations. Similarly, this court cannot quarrel with the holding in *Ellis* that a post-confirmation default in plan payments due under a deed of trust justifies relief from the automatic stay of proceedings. The court in *Ellis* did not consider a post-confirmation modification in the plan to correct the debtor's default.

Although the Court in *In re Johnson,* 708 F.2d 865 (2nd Cir.1983) was deciding a Chapter 13 case in the context of good faith and repetitive filings, rather than deciding the issue of whether a plan could be confirmed post-modification, the Court did state as follows:

The Bankruptcy Judge should determine whether Johnson had a bona fide change in circumstances that justified both her default on her first plan and her second filing. The judge is of course not precluded from considering all events that have occurred during the pendency of this litigation.

Lest this decision be interpreted as a judicial endorsement of successive filings, however, we point out that Congress did provide a statutory mechanism for modifying a confirmed Chapter 13

bankruptcy plan in just such circumstances as Johnson allegedly suffered. Section 1329 of Title 11 U.S.C. permits reducing the amount of payments, extending the time for payments, or even changing the amount due a particular creditor, on proper petition and showing. As the legislative history makes clear, if problems such as a long-term layoff or family illness and medical bills make execution of a confirmed plan impracticable, the Act even permits a temporary moratorium on payments. H.R.Rep. No. 595, 95th Cong., 2d Sess. 125, *reprinted in* 1978 U.S.Code Cong. & Ad.News, 5787, 5963, 6086. There is no doubt that Johnson's counsel ignored this statutory modification process; instead, after default on the first repayment plan, he did not oppose its dismissal, and then refiled close on the heels of the foreclosure proceeding. We do not read § 1329, however, as necessarily foreclosing second filings, although in a change of circumstances such as alleged here it is obviously the more appropriate procedure.

*Id.* 708 F.2d at 868.

Thus, rather than face dismissal upon default in the terms of a confirmed plan, and the necessity of filing a second chapter 13 where there would be no basis to object to the Second Petition based on lack of good faith, in that there has been a clear and substantial change in circumstances, public policy and judicial economy dictates that the debtor should be able to modify a confirmed plan.

This court is concerned with the lack of evidence in the record concerning the ability of the Debtor's proposed modification to cure the arrearages, and pay the attorney's fees incurred by Citizens. This court is also concerned that the Debtor has not provided this court with any competent evidence of cause for the failure to make post-confirmation plan payments (i.e., affidavits), and reasonable assurance that the Debtor will be able to continue to make the payments under the proposed modified plan. It must always be remembered that pursuant to § 1329(b)(1), the modified plan must meet all the requirements of

§§ 1322(a), 1322(b), 1323(c) and § 1325(a). This includes § 1325(a)(6) regarding feasibility, i.e. that the Debtor will be able to make all the plan payments under the plan as amended, and comply with the amended plan. In addition, the case was filed on November 2, 1988, and a plan originally filed on November 14, 1988. Thus, pursuant to § 1329(c) which provides that a modified plan may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was due, unless the Court for cause approves a longer period, not to exceed five years, the plan period cannot extend under any circumstances beyond November 13, 1993.

■■■■■ This court is convinced that in appropriate circumstances a post-confirmation modification of a plan may be appropriate wherein a post-confirmation mortgage arrearage is proposed to be cured, where the reason for the post-confirmation arrears was unanticipated and substantial by an objective standard at the time the confirmed plan sought to be amended was confirmed. That is, the reason for the Debtor's altered financial condition was not in existence, or could not have been reasonably anticipated at the time of confirmation. A mere default in the plan payments based on a failure to properly apply disposable income as required by the plan is not sufficient, without an additional showing.

■■■■ It is also clear that pursuant to § 1322(b)(2), the Debtor cannot alter or modify the amount of the regular, monthly mortgage payment when the mortgage is secured only by the Debtor's principal residence. Thus, regardless of how the plan is formulated to cure post-petition defaults as to such a mortgage, the legal obligation to pay the regular monthly payment continues to accrue. Thus in the event that all of the defaults in the regular monthly mortgage payment are not cured by the time the case is ready to be closed, the Debtor will be subject to immediate foreclosure when the case is closed, and the Debtor receives his discharge wherein the automatic stay is then vacated.

Based on the record as it now stands, this court is not convinced that this is the case in which such a modification should be allowed. Evidence will be needed to determine whether at the time of confirmation the Debtor either actually knew or could have reasonably anticipated that there would be a change in his financial condition post-confirmation, and whether that change was substantial. If the reasons for the post-confirmation change in circumstances was known to the Debtor, or could have been reasonably anticipated prior to confirmation of his Second Amended Plan on July 25, 1989, then any such change in circumstances is now *res judicata*, and cannot now form the basis for a post-confirmation modification. In addition, feasibility of the proposed amended plan is still in issue. It is therefore,

ORDERED ADJUDGED AND DECREED, that the objection by Citizen's to the Debtor's Second Amended Post–Confirmation Plan is set down for a final evidentiary hearing on Oct. 18, 1990 at 4:00 o'clock P.M.