**In re Michael D. FITAK, Madge R. Fitak, fdba The Public Phone Store, Debtors.**

**Bankruptcy No. 2–85–00376.**

United States Bankruptcy Court, S.D. Ohio, E.D.

June 29, 1988.

Robert H. Farber, Jr., Columbus, Ohio for debtors.

F. Richard Heath, Hite & Heath, Utica, Ohio for Cambridge PCA.

Frank M. Pees, Worthington, Ohio Chapter 13 trustee.

Michelle T. Sutter, Baker & Hostetler, Columbus, Ohio for trustee.

Henry P. Montgomery, Baker & Hostetler, Columbus, Ohio, for Chapter 13 trustee.

Charles M. Caldwell, U.S. Dept. of Justice, Columbus, Ohio, Asst. U.S. trustee.

Stephen A. Santangelo, Weltman, Weinberg & Associates Co., L.P.A., Columbus, Ohio, for Cheers Communications Corp.

William B. Logan, Jr., Luper, Wolinetz, Sheriff & Neidenthal, Columbus, Ohio, for Old Stone Credit Corp. of Ohio.

## OPINION AND ORDER

R. GUY COLE, Jr., Bankruptcy Judge.

### I. *Preliminary Statement*

The following contested matters are before the Court for decision:

(1) the Motion for Treatment of Claim filed by Frank M. Pees, the standing Chapter 13 trustee ("Trustee");

(2) the motions for modification of debtors' Chapter 13 plan (collectively referred to as the "Modification Motions"), filed by the Trustee, Cheers Communications Corporation ("Cheers") and Bank One of Columbus, NA ("Bank One"); and

(3) the Motion to Dismiss Chapter 13 Proceeding and Motion for Reconsideration filed by Old Stone Credit Corporation of Ohio ("Old Stone Motion").

These matters were heard and taken under advisement by the Court. In the interest of judicial economy, the Court hereby consolidates its decision on these matters.

Jurisdiction of this case is vested in the Court pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this judicial district. These contested matters are core proceedings which the Court may hear and determine under authority of 28 U.S.C. § 157(b)(1), and (2)(A) and (B). This Opinion and Order shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule ("B.R.") 7052.

### II. *Factual Findings*

1. Michael and Madge Fitak ("Debtors") filed a petition under Chapter 13 of the Bankruptcy Code on February 8, 1985. According to their bankruptcy schedules, Debtors owned the following-described two parcels of real property as of the petition date: (1) their residence located at 10288 Gorsuch Road, Galena, Ohio (the "Residential Property"); and (2) an adjoining 28–acre tract of unimproved land located in Delaware County, Ohio (the "Adjoining Tract"). At the time the Chapter 13 case was filed, the Residential Property was encumbered by a first mortgage held by Citizens Federal Savings & Loan of Dayton ("Citizens Federal"); a second mortgage held by Unimortgage Corporation of Ohio, which now does business as Old Stone

Credit Corporation ("Old Stone"); and, a third mortgage held by Huntington National Bank ("HNB"). The Federal Land Bank of Louisville and HNB held first and second liens, respectively, on the Adjoining Tract.

2. An appraisal filed by Debtors established that the combined fair market value of the Residential Property and the Adjoining Tract was in the $130,000–$132,000 range as of the petition date. The evidence adduced at the hearings upon the motions failed to establish whether or not the combined fair market value of the Residential Property and the Adjoining Tract exceeded the total amount of the outstanding encumbrances thereon.

3. Between November, 1984, and January, 1985, Debtors operated a sole proprietorship known as "The Phone Store." Debtors commenced operations after purchasing all business equipment, furniture, fixtures, inventory and accounts receivable of The Phone Store from Cheers in November, 1984. As a part of the purchase, Debtors received an assignment of a franchise agreement originally executed by and between Cheers and Stanwood Electronics Company. The purchase price paid by Debtors for the assets of The Phone Store, as well as the assignment of the franchise agreement, was $40,000. Cheers financed the Debtors' purchase of the business and received a cognovit promissory note ("Note") from Debtors dated November 16, 1984, in the principal amount of $40,000. Shortly thereafter, Cheers declared the Note in default and obtained a judgment against Debtors in the Common Pleas Court, Delaware County, Ohio. On January 31, 1985, Cheers filed a certificate of judgment with the appropriate governmental authorities in Delaware County, thereby obtaining a judgment lien against certain property of the Debtors.

4. Debtors ceased operating The Phone Store upon their default under the Note. They thereupon surrendered all assets of the business to The Morse Road Co., the lessor of the business premises. Cheers was unsuccessful in its subsequent attempts to sell back the franchise to the franchisor or to obtain a buyer for the franchise through a business broker.

5. On December 13, 1985, this Court entered an order confirming Debtors' Second Amended Chapter 13 plan ("Plan"). The Plan, as confirmed, provides for monthly payments to the Trustee of $1,100, payment in full of secured and priority unsecured claims, and a 20% dividend to holders of allowed nonpriority unsecured claims. The Plan, which was projected to require 57 months for completion, contains the following additional provisions:

> Debts created by virtue of deposit [sic] taken by debtors for goods undelivered shall be treated as priority creditors and shall be paid 100 cents on the dollar.

> On or before 57 months from the date of confirmation debtors shall sell or refinance such of their realty as is necessary to liquidate their Plan.

> Debtors hereby disclaim any interest in and/or surrender to Cheers Communications the following property in which this creditor claims a security interest:

> (1) Franchise agreement re operation of "The Public Phone Store" by and between Stanwood Electronics, franchisor and Cheers Communications, franchisee, and assignor of its interest to debtors as assignees and valued at $10,000.00 by agreement between Cheers Communications and debtors herein.

> (2) All business machinery and furnishings located on the premises of "The Public Phone Store" formerly occupied by debtors at 4651 Morse Center Drive, Columbus, Ohio.

> (3) Cash register and small printing calculator located at debtors' residence.

> (4) Rejecting secured claims shall receive a dsicount [sic] factor of 13% per annum.

Plan at 2.

6. At the time of the Plan's confirmation, and after ceasing the operation of The Phone Store, Michael Fitak became employed as an engineer and technical writer for Diebold, Inc. Madge Fitak was employed at such time by the State of Ohio Auditor's Office, Department of Natural Resources ("ODNR").

7. In March, 1986, Madge Fitak terminated her employment with ODNR. In June of 1986, Madge Fitak withdrew approximately $16,000 in retirement funds which she had deposited into the Public Employees Retirement System ("PERS") fund during the course of her employment. Debtors did not advise the Trustee of Mrs. Fitak's withdrawal of her PERS account.

8. On March 26, 1985, Unimortgage Corporation of Ohio, now doing business as Old Stone, filed its claim in the amount of $22,603.10 (the "Old Stone Claim") with the Court. The Old Stone Claim included "interest from 2–8–85." Old Stone failed to mark the box on the proof of claim indicating acceptance or rejection of the Plan.

9. On June 14, 1987, this Court entered an agreed order, granting Debtors' application for authority to sell the Adjoining Tract. The Adjoining Tract thereupon was sold for the sum of $41,146.50. All liens on the Adjoining Tract were satisfied in full and Debtors received a mortgage from the purchasers in the principal amount of $21,-146.50, payable over five years, with interest at a rate of 7% per annum. Debtors sold this mortgage to Credithrift of America, Inc. ("Credithrift") for $15,000 in cash. The Debtors did not inform the Trustee of the sale to Credithrift or their receipt of $15,000 therefrom.

10. On June 30, 1987, this Court entered an order in the related adversary proceeding—*Fitak v. Cheers Communications Corp.*, 92 B.R. 243 (the "Adversary Proceeding")—which resulted in the Debtors' successful avoidance, pursuant to 11 U.S.C. § 547, of the judgment lien held by Cheers on Debtors' Delaware County property.

11. An agreed order granting Debtors' Application for Leave to Sell Real Estate was entered by the Court on September 17, 1987. Pursuant to the Court's order, Debtors sold the Residential Property for the sum of $111,200. The proceeds from the sale of the Residential Property were disbursed by the Debtors as follows:

a) the claim of the first mortgage holder, Citizens Federal, was fully satisfied;

b) all costs of sale, including realtor fees, were paid;

c) the "balance" of Old Stone's secured claim was paid; and

d) sufficient proceeds were submitted to the Trustee for distribution pursuant to the Plan and confirming order.

After distributing the proceeds from the sale of the Residential Property in the above-described manner, Debtors were left with, and retained, the sum of $13,349.94.

## III. *Discussion*

### A. Motion for Treatment of Claim

■ The Motion for Treatment of Claim filed by the Trustee may be disposed of summarily. The Trustee asks the Court to reduce Cheers' claim by an amount equal to the value of the business equipment, accounts receivable, furniture, fixtures and inventory of The Phone Store. The Trustee further requests the Court to deduct from Cheers' claim the value of the franchise agreement surrendered to Cheers by the Debtors.

■ B.R. 3001(f) provides that a properly executed and filed proof of claim constitutes *prima facie* evidence of the validity and amount of the claim. Here, the Trustee adduced no evidence to support his contention that the amount of Cheers' claim should be reduced. Hence, because the presumption provided by B.R. 3001(f) has not been rebutted, the Trustee's motion must be denied. Furthermore, even if the Trustee had overcome the evidentiary effect of B.R. 3001(f), the evidence presented by Cheers plainly refutes the Trustee's position. The uncontroverted testimony of Cheers' president, Ronald Cheers, indicated that, after Debtors' default under the Note, all of the physical property—presumably the business equipment, furniture, fixtures and inventory—securing Cheers' loan to the Debtors was surrendered to The Morse Road Co. In addition, Ronald Cheers' testimony that the franchise agreement was valueless is supported by Cheers' unsuccessful attempt to sell the franchise back to the franchisor or dispose of the franchise through a business broker.

In sum, the record before the Court fails to support the Trustee's assertion that the amount of Cheers' claim should be reduced. Accordingly, the Trustee's Motion for Treatment of Claim is hereby DENIED.[1]

## B. Modification Motion

As noted above, the Trustee, Cheers and Bank One (the "Movants") have each filed motions requesting modification of Debtors' Plan to take into account three post-confirmation events:

1. Madge Fitak's termination of employment with ODNR and her June, 1986, withdrawal of approximately $16,-000 from the PERS retirement fund;

2. Debtors' receipt of $15,000 in June, 1987, following the sale of Credithrift of the five-year, $21,146.50 mortgage which Debtors obtained upon selling the Adjoining Tract; and

3. Debtors' receipt of $13,349.94, following the sale of the Residential Property in September, 1987, and the satisfaction of all encumbrances thereon.

Modification of the Plan is appropriate pursuant to 11 U.S.C. § 1329(a), Movants claim, on the ground that these events were not foreseeable at the time the Plan was confirmed. Debtors dispute this assertion: they argue that all of their assets, including the PERS retirement fund, were fully disclosed prior to confirmation of the Plan; *a fortiori*, the Trustee and parties-in-interest had ample opportunity to request inclusion of such proceeds for distribution pursuant to the Plan. Further, Debtors submit that the mere fact their properties brought more than originally expected upon sale does not constitute such unforeseeable, changed circumstances as would warrant modification under § 1329(a).

In 1984, 11 U.S.C. § 1329(a) was amended to permit the Trustee or the holder of an allowed unsecured claim to seek post-confirmation modification of a Chapter 13 plan. The language of former 11 U.S.C. § 1329(a) did not explicitly state that the

right to seek a post-confirmation modification was limited to the debtor exclusively. However, the legislative history clearly indicated that such exclusivity was intended:

After confirmation but before the completion of payments, the debtor may request a modification of the plan, to increase or reduce payments under the plan for a particular class, to extend or reduce the time for payments, or to alter the amount of distribution to a creditor whose claim is provided for by the plan, to the extent necessary to take account of any payment of his claim other than under the plan.

H.R.Rep. No. 595, 95th Cong., 1st Sess., *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6386–87. *See also, In re Fluharty*, 23 B.R. 426, 429 (Bankr.N.D. Ohio 1982); *Matter of Nelson*, 27 B.R. 341, 345 (Bankr.M.D.Ga.1983). Section 1329(a), as presently worded, states:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

Section 1329(a) provides little, if any, guidance as to the standard to be applied by a bankruptcy court in determining whether a request for a post-confirmation modification of a Chapter 13 plan should be granted. The legislative history suggests that § 1329(a) was enacted in order to complement the so-called ability-to-pay test of § 1325(b),[2] which was added to the Code by

---

**1.** The Trustee also contends that Cheers' claim should be treated as unsecured. The Court's order entered June 30, 1987, in the Adversary Proceeding resulted in the avoidance of Cheers' judgment lien. Accordingly, the Cheers claim indeed is unsecured.

**2.** 11 U.S.C. § 1325(b) states:

the Bankruptcy Amendments and Federal Judgeship Act of 1984. The legislative history provides the following insight:

> The ability-to-pay standard would be made applicable to plan modifications following confirmation, by the addition of a new subsection 1329[a], which would permit the debtor or the holder of an allowed unsecured claim to request modification of the plan in response to changes in the circumstances of the debtor substantially affecting the ability of the debtor to make future payments under the plan. New subsection 1329[a] would provide a measure of flexibility not presently available by permitting accommodation of the performance required under the chapter 13 plan to better suit the actual circumstances encountered during the course of the plan.
>
> . . . .
>
> The purpose of this amendment is to permit the debtor or the holder of an allowed unsecured claim to request modification of a confirmed chapter 13 plan in response to changes in circumstances of the debtor substantially affecting (favorably or unfavorably) the ability of the debtor to make payments under the plan, as determined by reference to the ability-to-pay test set forth in § 1325.

*Oversight Hearings on Personal Bankruptcy Before the Subcommittee on Monopolies and Commercial Law of the House Committee on the Judiciary*, 97th Cong., 1st Sess. 181, 215–16, 221 (1981–82).

While the legislative history indicates that a post-confirmation modification should be ordered pursuant to § 1329(a) upon a showing of changed circumstances which affect a debtor's ability to pay, the case law suggests that the doctrine of *res judicata* limits the scope of appropriate post-confirmation modifications. *In re Moseley*, 74 B.R. 791, 799–800 (Bankr.C.D. Cal.1987) (holding that an order confirming a Chapter 13 plan is *res judicata* as to all justiciable issues which were or could have been decided at the confirmation hearing). In *Anaheim Savings & Loan Association v. Evans (In re Evans)*, 30 B.R. 530, 531 (Bankr. 9th Cir.1983), the Ninth Circuit, noting that § 1327(a)[3] of the Code binds all creditors to the terms of a confirmed plan, described the *res judicata* effect of an order confirming a Chapter 13 plan in the following manner:

> An order confirming a Chapter 13 plan is res judicata as to all justiciable issues which were or could have been decided at the confirmation hearing.... Section 1327 precludes a creditor from asserting after confirmation, any other interest than that provided for it in the confirmed plan.

*Accord, Ford Motor Credit Co. v. Lewis (In re Lewis)*, 8 B.R. 132, 137 (Bankr.D.Idaho 1981); *Western Thrift & Loan Association v. Blair (In re Blair)*, 21 B.R. 316, 317 (Bankr.S.D.Cal.1982); *In re Zimble*, 47 B.R. 639, 640 (Bankr.D.R.I.1985); *Moseley*, 74 B.R. at 799–800. A noted commentator likewise has suggested that the doctrine of *res judicata* requires the limitation of post-confirmation modifications to cases in which the change in a debtor's ability to pay was unanticipated at the time of confirmation:

> In view of this congressional purpose [*i.e.*, the extension of the ability-to-pay test to plan modifications], the right of the trustee or the holder of an unsecured claim should be limited to situations in which there has been a substantial change in the debtor's income or expenses *that was not anticipated at the*

---

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

**3.** Section 1327(a) provides as follows:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

*time of the confirmation hearing.* As to other matters, the confirmation order should be considered *res judicata* insofar as they do not relate to a change in the debtor's ability to pay, subject only to the limited right to revocation of the order of confirmation and, of course, the debtor's right to voluntarily request modification.

When a request for modification is made by the trustee or the holder of an unsecured claim, *the party requesting modification must bear the burden of showing a substantial change in the debtor's ability to pay since the confirmation hearing and that the prospect of the change had not already been taken into account at the time of confirmation.* A trustee or unsecured claim holder may not raise as grounds for modification under this section facts which were known and could have been raised in the original confirmation proceedings, since the order of confirmation must be considered *res judicata* as to that set of circumstances.

Assuming that a trustee or holder of an unsecured claim can show a substantial and *unanticipated* increase in the debtor's income or decrease in the debtor's expenses, then the ability-to-pay test should be applied to the modification proceeding in the same manner as in the original confirmation proceeding.

5 *Collier on Bankruptcy* ¶ 1329.01[b] at 1329–4 to 1329–5 (15th ed. 1988) (emphasis added) (footnotes omitted).

██ As the discussion above indicates, the doctrine of *res judicata* operates as a limitation on the ability of parties to obtain a post-confirmation modification under § 1329(a) based upon unanticipated changed circumstances. In determining whether the Debtors' changed circumstances were unanticipated, the Court is inclined to apply an objective, as opposed to a subjective, test. Stated differently, evidence regarding what the Trustee and the unsecured creditors actually anticipated with respect to a debtor's present or prospective circumstances does not control the Court's modification analysis; instead, the Court must determine whether a debtor's altered

financial circumstances could have been *reasonably anticipated* at the time of confirmation by the parties seeking modification. With the foregoing principles in mind, the Court will turn to the facts of the instant case.

██ The sales of the Residential Property and the Adjoining Tract were explicitly provided for by the Plan. Although such sales were clearly contemplated, Movants claim they could not anticipate Debtors' receipt of substantially more than the appraised value of such properties from their sale. The Court disagrees. An appraisal which established the combined fair market value of the Residential Property and the Adjoining Tract at $130,000–$132,000 was filed by Debtors on March 12, 1985. The sales of the Adjoining Tract and the Residential Property occurred in June and September, 1987, respectively. The total amount generated from these two sales was $152,346.50. Clearly, Movants could have anticipated the probable appreciation in value of those properties in the two to two and one-half years between the time the Plan was confirmed and the dates the properties were sold. The reasonable foreseeability or anticipation of appreciation in value of the Residential Property/Adjoining Tract properties is further established by the fact that the Plan did not contemplate the sale of such properties until fifty-seven (57) months from the date of confirmation. Movants simply strain credulity in suggesting they could not have reasonably anticipated an approximately $20,000 appreciation in value of such properties over the course of the 57 months between confirmation and the sale proposed by the Plan.

Further, Movants knew, at the time the Plan was confirmed, that it provided only for the payment of such portion of the proceeds from the sales as was necessary to "liquidate [Debtors'] Plan." Armed with this knowledge, Movants could have anticipated an appreciation in value and interposed objections to confirmation on that basis. For example, one might argue that § 1325(b)'s disposable income test requires

the devotion to the Plan of all sale proceeds over and above the amount needed to liquidate the 20% composition Plan. *Cf., In re Krull,* 54 B.R. 375, 377 (Bankr.D.Colo. 1985); *In re Akin,* 54 B.R. 700, 703 (Bankr. D.Neb.1985); *In re Schyma,* 68 B.R. 52, 63 (Bankr.D.Minn.1985) (sustaining creditors' objections to confirmation on the ground that plans which failed to include provisions committing future wage increases to the plan failed to meet § 1325(b)'s disposable income test). Moreover, had the Movants filed an objection to confirmation of the Plan,[4] Debtors would have been required automatically to submit all their disposable income to the Trustee for a three-year period. *See,* 11 U.S.C. § 1325(b). The Court finds, therefore, that the sale by Debtors of the Residential Property and the Adjoining Tract, for an amount approximately 20% greater than the properties' combined appraised value at the time this case was filed, is not such an *unanticipated* change in Debtors' circumstances as would support modification of the Plan under 11 U.S.C. § 1329(a).

■ The withdrawal by Madge Fitak of approximately $16,000 from her PERS retirement account upon termination of her employment with ODNR is somewhat more problematic. Movants say they could not have foreseen Madge Fitak's voluntary termination of her employment and immediate withdrawal of her retirement funds. Debtors counter this argument, noting the disclosure of the PERS retirement account as an asset in Schedule 13.b. of Debtors' Chapter 13 Statement. Thus, according to Debtors, Movants could have reasonably anticipated the withdrawal of such funds.

With respect to this issue, the Court concludes that the Movants' argument is meritorious: Madge Fitak's withdrawal of the funds in her PERS account constitutes a change in Debtors' financial circumstances which could *not* have been reasonably foreseen by Movants at the time of confirmation. Many Chapter 13 debtors maintain funds in retirement accounts which are not subject to withdrawal until retirement or termination of employment. In the vast majority of such cases, the debtor does not terminate his employment and withdraw accrued retirement funds during the pendency of the plan. Indeed, it is the debtor's continuing employment which generates the income necessary to fund his Chapter 13 plan. In such cases, it clearly would be unreasonable and unduly burdensome to require creditors to foresee a potential employment termination or retirement and insist upon inclusion of a provision in every plan requiring submission of withdrawn retirement funds to the Trustee for distribution in such event. Thus, Madge Fitak's withdrawal of $16,000 in PERS retirement funds was not an event which could have been reasonably anticipated by Movants at the time of the Plan's confirmation. Accordingly, because there has been an unanticipated change in Debtors' financial circumstances, the Court hereby grants the Modification Motions, in part, so as to require modification of the Plan to provide for payment of $16,000—the amount of PERS retirement funds withdrawn by Madge Fitak—to the Trustee for distribution to holders of allowed unsecured claims.

The Court, in denying, in part, the Modification Motions, is cognizant of the general principles underlying Chapter 13 and the perhaps perceived unfairness to the creditor body in allowing the Debtors to retain a substantial sum of money that might otherwise be used to increase the dividend to unsecured claimholders. While the Court fully agrees that unanticipated windfalls should inure to the benefit of the creditors and not the debtor, the same does not hold true for anticipated changes in circumstances.[5] Thus, as unpalatable as it may

---

4. Cheers filed an objection to the confirmation of Debtors' original Chapter 13 plan. An order of this Court sustaining Cheers' objection was entered on July 10, 1985. However, no objections were filed by any party-in-interest to the Second Amended Plan, which was ultimately confirmed by the Court on December 13, 1985.

5. Movants cited two cases in support of their assertion that, because the appreciation of the Residential Property/Adjoining Tract was an unanticipated event, modification of the Plan should be ordered: *In re Koonce,* 54 B.R. 643 (Bankr.D.S.C.1985) (debtor's winning state lottery after confirmation of Chapter 13 plan justifies modification for 100% payment to credi-

appear, the creditors' decision not to object to the Plan's omission of payment to creditors of amounts representing the appreciation in value of certain properties—when such creditors clearly had the ability to do so—results in the Debtors' retention of these sums of money.

### C. Old Stone Motion

Old Stone filed its Dismissal Motion on December 14, 1987, following this Court's entry of an order denying its Motion for Clarification of Plan on December 4, 1987. Although denominated as a motion to dismiss, Old Stone essentially seeks modification of the Plan to require the payment to it of $5,084.36. The $5,084.36 sum represents interest which has accrued on Old Stone's secured claim since the filing of Debtors' Chapter 13 case.

Debtors oppose the motion filed by Old Stone, arguing that 11 U.S.C. § 1325(a)(5) requires the payment of interest only upon the secured claims of creditors who have rejected a Chapter 13 plan. Thus, according to Debtors' argument, Old Stone has, in fact, accepted the Plan by virtue of its failure to check either the acceptance or rejection box on the face of the Old Stone Claim. Because Old Stone has accepted the Plan, it therefore is not entitled to receive the $5,084.36 in interest, or any interest, on its claim.

Old Stone asserts it is clearly entitled to the payment of accrued post-petition interest under § 1325(a)(5). Old Stone also argues that the denial of payment of post-petition interest on its claim violates § 1322(b)(2)—which prohibits the modification of the rights of holders of claims secured only by real property that is the debtor's principal residence. Finally, Old Stone contends it is entitled to receipt of post-petition interest on its secured claim by virtue of B.R. 3001(f).

With respect to Old Stone's first argument, Section 1325(a)(5) of the Code provides as follows:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

....

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B) (i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; ....

Section 1325(a)(5) requires the satisfaction of one of three alternatives with respect to each allowed secured claim provided for by the plan: (1) acceptance of the plan by the claimholder, see, 11 U.S.C. § 1325(a)(5)(A); (2) compliance with the so-called cram-down provisions of Chapter 13, see, 11 U.S.C. § 1325(a)(5)(B); or (3) surrender of the collateral to the holder of the claim, see, 11 U.S.C. § 1325(a)(5)(C). As noted above, the requirements of § 1325(a)(5) of the Code may be met if the holder of an allowed secured claim accepts the Chapter 13 plan. In the event a secured claimholder rejects a Chapter 13 plan, compliance with the cramdown provisions of § 1325(a)(5)(B), as interpreted by the Sixth Circuit in *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427, 429 (6th Cir.1982), requires the payment of interest on such creditor's secured claim. Hence, resolution of the controversy regarding Old Stone's entitlement to accrued post-petition interest on its secured claim centers upon whether Old Stone shall

tors); *In re Euerle,* 70 B.R. 72 (Bankr.D.N.H. 1987) (modification of plan to provide for 100% dividend to unsecured claimholders required where debtor failed to disclose prior to confirmation of Chapter 13 plan that he was about to inherit $300,000 from his deceased father). The Court finds that the *Koonce* and *Euerle* deci-

sions are inapposite. Unlike the windfall situations presented in *Koonce* and *Euerle,* the changed circumstances in the case *sub judice—i.e.,* appreciation realized by Debtors upon the sale of their properties—were reasonably foreseeable by Movants at the time of confirmation.

be deemed to have accepted or rejected the Plan.

Old Stone's argument assumes that its failure to specify on the proof of claim its acceptance or rejection of the Plan is deemed to be a rejection. This premise clearly is without merit. Former Local Superintendency Order No. 83–03 (September 13, 1983), in force and effect at the time Old Stone filed its proof of claim,[6] provided in relevant part as follows:

> Any claimant who fails to affirmatively reject a plan proposed pursuant to Chapter 13 of the Bankruptcy Code will be deemed to have accepted such plan. ·

The rule established by former Superintendency Order No. 83–03 is clear: the holder of a secured claim who fails to affirmatively reject a proposed Chapter 13 plan shall be deemed to have *accepted* the treatment of its claim provided in the plan. Application of this rule leads to the unmistakable conclusion that Old Stone's failure to check the acceptance or rejection box constitutes an acceptance. Because the Plan provides for payment of interest at 13% per annum to rejecting secured claimholders, and having concluded that Old Stone has accepted the Plan, Old Stone is not entitled to receive accrued interest.

Further, Old Stone's reliance upon 11 U.S.C. § 1322(b)(2) is misplaced. Because the Old Stone Claim was secured solely by Debtors' principal residence, Old Stone argues its failure to receive $5,084.36 in accrued interest constitutes a modification of its contractual rights which is proscribed by § 1322(b)(2) of the Code.[7] Old Stone's argument, however, ignores the fact that "§ 1325(a)(5)(A) would allow ... a mortgagee to consent to a modification of its rights notwithstanding the apparently blanket modification of § 1322(b)(2)." *In re Neal*, 10 B.R. 535, 538 (Bankr.S.D.Ohio

1981). Here, it is not Debtors' Plan which effects an impermissible modification of Old Stone's rights. Instead, it was Old Stone's acceptance of the Plan—deemed by virtue of its failure to affirmatively accept or reject the Plan—which has resulted in a modification of its rights. Plainly, § 1325(a)(5)(A) permits a secured claimholder to accept treatment less favorable than that mandated by 11 U.S.C. § 1322(b)(2).

Old Stone's reliance upon B.R. 3001(f) is equally unavailing. B.R. 3001(f), which sets forth the evidentiary effect to be accorded a properly executed and filed proof of claim, provides:

> **(f) Evidentiary Effect.** A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.

Old Stone submits that, because its claim purported to include "interest from 2–8–85," it must receive such interest pursuant to B.R. 3001(f), since a timely objection to the Old Stone Claim has not been lodged by any party-in-interest. While Old Stone's argument is based upon fine circular reasoning, the Court is compelled to reject this contention. B.R. 3001(f) obviously cannot create substantive rights not otherwise possessed by Old Stone. As discussed above, Old Stone's entitlement to interest on its secured claim under § 1325(a)(5)(B) and the *Memphis Bank* decision would derive from its status as a *rejecting* secured creditor. Having determined that Old Stone has, in effect, accepted the Plan, the Court holds that Old Stone is not entitled to interest. B.R. 3001(f)'s operation cannot create in Old Stone a right to interest on its secured claim not otherwise provided by the Code.

Based upon the foregoing, the Court hereby ORDERS the following:

---

6. The rule established by former Superintendency Order No. 83–03 has been carried forward by the promulgation of L.B.R. C–3.18.12(e), which states in pertinent part as follows:

> Claimants which do not specifically reject the treatment proposed in the plan for their claim shall be deemed to have accepted the plan.

7. Section 1322(b)(2) states:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>
>       \*     \*     \*     \*     \*     \*
>
> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims; ....

1. The Trustee's Motion for Treatment of Claim is hereby DENIED. Cheers' claim shall be allowed as an unsecured claim in the amount of $41,864.00;

2. The Modification Motion is GRANTED in part and DENIED in part. The Plan is hereby MODIFIED to require all funds withdrawn by Madge Fitak from her PERS retirement fund to be paid to the Trustee for distribution in accordance with the Plan, as modified. Movants' request that the Plan be modified to require Debtors to pay to the Trustee the proceeds received upon sale of the Residential Property/Adjoining Tract is hereby DENIED;

3. Old Stone's Dismissal Motion, which seeks either dismissal of the Plan, reconsideration of its previous Motion for Clarification and/or modification of the Plan to require full payment to Old Stone of accrued interest on its allowed secured claim, is hereby DENIED in its entirety.

IT IS SO ORDERED.