**In re Thomas Charles McNULTY and Frances Ann McNulty, Debtors.**

**Bankruptcy No. 90–32243.**

United States Bankruptcy Court,
D. New Jersey.

June 30, 1992.

[redacted]

William G. Tauriello, Strauss & Tauriello, Flemington, N.J., for debtors.

Peter J. Broege, Wood, Broege & Fischer, Manasquan, N.J., for trustee.

## MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

In this chapter 13 case the debtors have moved for modification of their confirmed plan and for amendment of their schedule of exemptions. The trustee has objected to the modification of the debtors' plan. This court has jurisdiction under 28 U.S.C. §§ 1334(b) and 151. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L). For the reasons stated below, the motion is denied. This shall constitute the court's findings of fact and conclusions of law.

## FINDINGS OF FACT

On May 24, 1990, Thomas Charles McNulty and Frances Ann McNulty ("the debtors") filed a joint petition for adjustment of their debts under chapter 13 of title 11, United States Code ("Bankruptcy Code" or "Code"). Robert M. Wood, Esq. is the standing chapter 13 trustee in this vicinage. The debtors own real property in Flemington and Brigantine, New Jersey. The aggregate value of the real property on the petition date was $385,000. Mortgages and tax liens were approximately $293,000. The debtors therefore had equity in their property of approximately $92,000. There were priority claims of $9,470 and unsecured claims of $27,552. On August 28, 1990, the court confirmed the debtors plan requiring payments to the trustee of $1,325 per month for 59 months.[1] The

---

1. Apparently an order was never entered confirming the debtors' plan. The trustee is to submit one forthwith.

prepetition mortgage and tax arrearages and the entire amount due on the priority and unsecured claims were to be paid to the trustee under the plan. The debtors were to make mortgage payments falling due postpetition "outside the plan," i.e., directly to the mortgagees.

The debtors failed to make postpetition payments due on both mortgages on the Flemington property, which was their residence. Both mortgagees have obtained relief from the automatic stay to foreclose their mortgages. The debtors' modified plan proposes to surrender the Flemington property to the mortgagees in full satisfaction of their claims. The debtors have moved to the Brigantine property.

Code section 1325(a)(4) requires that the amount which the unsecured creditors receive under a plan shall not be less than they would receive if the estate were liquidated under chapter 7. The following calculations were used to determine this so-called liquidation threshold in connection with the debtors' original plan:

|  | Flemington Property | | Brigantine Property |
|---|---|---|---|
| Value: | $270,000. | | $115,000. |
| 1st mortgage: | 102,943. | | 72,724. |
| 2nd mortgage: | 91,137. | | 19,610. |
| Equity: | 75,920. | | 23,666. |
| Estimated Costs of Sale: | 27,000. | | 11,500. |
| Exemptions under § 522(d)(1) and (m): | 15,000. | | ———— |
| Liquidation threshold under § 1325(a)(4): | 33,920. | + | 12,166. = |
|  |  |  | $46,086. |

Since the liquidation threshold exceeded the total priority and unsecured claims, the original plan could not have been confirmed without providing for payment of 100% of the amount due on those claims. The debtors claimed no deductions from the liquidation threshold for any real estate taxes, income taxes or capital gains taxes which may have been due if a chapter 7 trustee had sold the property.

The debtors propose the following liquidation analysis in connection with their modified plan: [2]

|  | Flemington Property | | Brigantine Property |
|---|---|---|---|
| Value: | $270,000. | | $115,000. |
| Mortgages: | 194,080. | | 92,334. |
| Estimated Costs of Sale: | 27,000. | | 11,500. |
| Capital Gains Taxes: | 63,672. | | 7,500. |
| Equity: | (14,752.) | + | 3,666. = |
|  |  | (11,086.) |  |

2. It was noted in a phone conference with the Court on June 25, 1992 that the amounts stated as due in these calculations on the Flemington mortgages are incorrect in that they do not reflect interest accrued and unpaid after the petition date.

The trustee objects to confirmation of the modified plan. The trustee argues that the debtors permitted the equity in the Flemington property to erode by failing to make postpetition payments on the mortgages, and that the valuation of the liquidation threshold to unsecured creditors should be determined as of the petition date.

The debtors' certification of November 6, 1991 states that the primary reason why the debtors fell behind on the Flemington mortgages was unexpected school and tuition bills for their children. However, the budget in the debtors' chapter 13 statement, which the trustee and the court relied upon in confirming the debtors' plan, does not reflect any school or tuition expense.

The debtors' brief states that another reason for the failure to make postpetition mortgage payments was that the performance of Mr. McNulty's business worsened. However, that representation is neither certified by the debtors nor supported by any further explanation or evidence.

Lastly, although the debtors did not allege at the confirmation hearing on the original plan that any capital gains taxes would be incurred upon sale of their real property, they now propose to subtract capital gains taxes in the total amount of $71,172 from projected proceeds of sale in calculating the liquidation threshold for the modified plan.

## CONCLUSIONS OF LAW

### I. Standards for Modification of a Confirmed Plan

#### A.

Code section 1329(a) provides that a confirmed plan can be modified if certain conditions are met. 11 U.S.C. § 1329(a). There must be a showing of changed circumstances affecting the debtor's ability to pay as required by the terms of the original plan. *In re Fitak*, 92 B.R. 243, 249 (Bankr. S.D.Ohio 1988); *In re Lynch*, 109 B.R. 792, 796 (Bankr.W.D.Tenn.1989). Such circumstances, however, do not have to be extraordinary, as is required to obtain a hardship discharge under Code section 1328(b).

*In re Evans*, 77 B.R. 457, 459 (E.D.Pa. 1987).

#### B.

The doctrine of *res judicata* limits the permissible grounds for modification of a confirmed plan. *See Fitak, supra*, 92 B.R. at 249. "An order confirming a chapter 13 plan is *res judicata* as to all justiciable issues which were or could have been decided at the confirmation hearing...." *Anaheim Savings & Loan Association v. Evans (In re Evans)*, 30 B.R. 530, 531 (9th Cir.B.A.P.1983); 5 *Collier on Bankruptcy* ¶ 1329.01[b] at 1329–5 to 1329–6 (15th ed. 1992). In this case, the debtors could have argued in connection with confirmation of the original plan that capital gains taxes on the sale of the real property would reduce the liquidation threshold for unsecured creditors. They are therefore barred by the doctrine of *res judicata* from doing so in connection with the modified plan.

#### C.

Code section 1329(b) provides that the requirements of Code section 1325(a) apply to any plan modification. Code section 1325(a)(3) states as one condition to confirmation that a plan must be proposed in good faith and not by any means forbidden by law.

"Good faith," while not defined by statute or legislative history, *see* 5 Collier on Bankruptcy ¶ 1325.01[2][C] (15th ed. 1982), certainly does, however, require "honesty of intention," *Barnes v. Whelan*, 689 F.2d [193] at 200 [D.C.Cir.1982], in the sense of focusing on the debtor's conduct in the submission, approval, and implementation of a Chapter 13 bankruptcy plan. *Id.* at 197–200; *see also In re Goeb*, 675 F.2d 1386, 1389–91 (9th Cir.1982). The *Goeb* court held that a good faith determination requires a bankruptcy court to "inquire whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an inequitable manner." 675 F.2d at 1390.

*In re Johnson,* 708 F.2d 865, 868 (2d Cir. 1983).

A debtor's postconfirmation misconduct in connection with a plan can result in inability to prove that a modified plan has been proposed in good faith. *In re Jock,* 95 B.R. 75, 78 (Bankr.M.D.Tenn.1989).

 In this case, the debtors elected, after their plan was confirmed, to pay their childrens' tuition rather than the mortgages on their Flemington residence. In so doing, they permitted the equity in that property to erode to the point where the mortgagees were granted relief from the automatic stay. The tuition expenses were not disclosed in connection with confirmation of the original plan. Moreover, such expenses would not have been authorized under Code section 1325(b)(2) as reasonably necessary for the maintenance or support of the debtors or their dependents, since this court is not of the view that a debtor's creditors should pay tuition for the debtor's children. *See In re Jones,* 55 B.R. 462 (Bankr.D.Minn.1985) (college and secondary school tuition payments were not necessary expenses). By failing to make payments which they were obligated to make and by making payments which were impermissible, the debtors breached an obligation to their creditors which they undertook by the plan. 11 U.S.C. § 1327(a). In their modified plan, the debtors propose to shift the consequences of that breach from themselves to their creditors. Their breach of the original plan in this manner requires the conclusion that the modified plan has not been proposed in good faith. Confirmation is therefore denied.[3]

## II. Amendment of Exemptions.
### A.

 The debtors also move to transfer the exemption under Code section 522(d)(1)

of $7,500 apiece in equity in their residence from their Flemington property to their Brigantine property by amending the B–4 schedule of exemptions. Amendment of schedules is ordinarily allowed as a matter of course. *In re Myatt,* 101 B.R. 197 (Bankr.E.D.Cal.1989). However, a court has discretion to deny leave to amend on a showing of a debtor's bad faith or of prejudice to creditors. *Matter of Doan,* 672 F.2d 831, 833 (11th Cir.1982). In this case, the proposed amendment is part of the debtors' bad faith proposal to shift the expense of their childrens' tuition to their creditors. The motion to transfer the debtors' exemption under Code section 522(d)(1) from one property to the other is therefore denied.

### B.

 Lastly, the debtors move to amend the value stated in their chapter 13 statement for furniture and furnishings. They scheduled the total value of such items at $17,200 and claimed $8,800 thereof as exempt under Code section 522(d)(3) and (5). The debtors claim that they misunderstood the question in the chapter 13 statement, and stated the acquisition value. They now ask to change the stated value to a total forced sale value of $4,000. Since this would have the same effect as the other relief requested by the debtors, it is denied for the same reasons.

The trustee is to submit an order within ten days under Rule 4 of the Local Rules of Bankruptcy Practice.

---

3. Because of the debtors' lack of good faith, it is unnecessary for the court to determine whether the estate should be valued for purposes of a modified plan as of the effective date of such plan or as of the petition date. There are conflicting authorities on this point. Cases holding that the estate should be valued as of the effective date of a modified plan include *Matter of Milleson,* 83 B.R. 696, 699 (Bankr.D.Neb.1988) (interpreting identical statutory language in chapter 12), *Matter of Bluridg Farms, Inc.,* 93 B.R. 648, 653 (Bankr.S.D. Iowa 1988) (same), and *In re Fulcher,* 15 B.R. 446 (Bankr.D.Kansas 1981) (property in chapter 13 case valued as of date the plan is confirmed); *see also* 5 *Collier on Bankruptcy, supra,* at 1329–8. Cases holding that valuation in connection with a modified plan should be as of the petition date include *Hollytex Carpet Mills v. Tedford,* 691 F.2d 392 (8th Cir.1982) and *In re Statmore,* 22 B.R. 37 (Bankr.D.Neb.1982).