**In re Richard F. EHRET, Debtor.**

**Bankruptcy No. 98–52794(SAS).**

United States Bankruptcy Court,
D. New Jersey.

Sept. 3, 1999.

Brian W. Hofmeister, Markowitz And Zindler, Lawrenceville, NJ, for debtor.

Jae Kim, Stern, Lavinthal, Norgaard & Kapnick, Englewood, NJ, for American Express.

Erik Collazo, Manasquan, NJ, for Chapter 13 trustee.

## MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

The matter before the court is an objection by the chapter 13 standing trustee and by creditors American Express Travel Related Services, Inc. and American Express Centurion Bank (collectively "Amex") to confirmation of the debtor's chapter 13 plan. The debtor, Richard F. Ehret, included as an expense on Schedule J private school tuition in the amount of $2,000 per month for his son's special education needs, an expense that would be funded primarily from income of Barbara Ehret, the debtor's wife, rather than from the debtor's own income. The trustee and Amex object that tuition for private school is not a reasonably necessary expense within the meaning of Bankruptcy Code section 1325(b)(2)(A), notwithstanding the debtor's argument that his wife's income will pay for this expense. The trustee and Amex conclude that the plan therefore does not provide for payment into the plan of all of the debtor's projected disposable income as required by Bankruptcy Code section 1325(b)(1)(B). The court sustains the objection and denies confirmation of the plan.

The court has jurisdiction pursuant to 28 U.S.C. §§ 1334, 151(a) and 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

## FINDINGS OF FACT

The relevant facts are not in dispute. The debtor filed a petition for relief under chapter 13 of title 11, United States Code ("Bankruptcy Code" or "Code") on October 6, 1998 and proposed a plan, twice modified, that now provides for the sale of his family's primary residence, which he and his wife own as tenants by the entireties. The debtor estimates the fair market value of this property, located in Bay Head, New Jersey, to be $690,000. The plan proposes that the sale proceeds shall be disbursed outside the plan to the creditors with liens on the residence, including Jefferson Bank, Apex Mortgage Corporation, State of New Jersey Division of Taxation, and the Internal Revenue Service. Based on the estimated sale price of the residence at $690,000, the sale would pay all liens on the residence, costs of sale, the debtor's exemption and Ms. Ehret's share of the net proceeds, but leave nothing for unsecured creditors.

The debtor reported in his Second Modified Plan a total of $84,358.39 in unsecured claims, including the claims of Amex. The unsecured creditors would receive any excess from the sale of the residence if it is sold for more than is projected. In addition, the plan provides that unsecured creditors would receive, after administrative expenses, their pro rata share of payments of $100 the first three months, $500 in the fourth and fifth months and $200 for the remaining thirty-one months of the plan for a total of $7,500. Unless the sale price of the residence is more than is projected, the unsecured creditors would receive payment of less than ten percent of their claims under this plan.

On his second amended Schedule I filed April 27, 1999 the debtor reported combined monthly household income of $7,538.46. This consists of the debtor's net monthly income of $2,000 and his wife's net monthly income of $5,538.46. In the original Schedule I, the debtor reported his monthly income as $5,968 and his wife's as zero. The changes in their income occurred post-petition. The debtor, 71, retired in February 1999 to collect social security income, foregoing a consulting project that would have raised his monthly income to $9,300. During this time, his

wife took an interior decorating position, which raised her monthly income from zero to a net of $5,538.46 as currently scheduled. Ms. Ehret has certified that the debtor's purpose in retiring was to "focus his attention on the sale of our residence and his bankruptcy case." The debtor certified that he did not take on the consulting project because he was unable to refinance his home mortgage and "had to focus my attention to market the residence for sale."

According to his amended Schedule J, the monthly expenses of the debtor and his family now total $7,300 leaving an excess of $238.46 per month to fund the remaining plan payments of $200 per month. Of the $7,300 in monthly expenses, $2,000 per month is tuition for his 16–year–old son's private school. The debtor's wife certified, without explanation or supporting documentation, that private schooling is necessary to meet their son's special education needs. Ms. Ehret explicitly withheld her consent to payment of the additional $2,000 of her income into the plan.

### The Debtor's Position

The debtor argues that the private school tuition of their son should be counted as a reasonably necessary expense under the Code rather than disposable income to be used to fund a plan. The debtor alleges that his son is in need of special education, with the implication that it is unavailable in the public schools. The debtor also argues that, even if the $2,000 tuition is included in disposable income, the Code does not require non-debtor spouses to pay income into a plan, and that because his wife is paying their son's private school tuition, the question of whether that tuition is a necessary expense is irrelevant. The debtor argues that his wife pays more than her share of the household expenses and is thereby entitled to spend any extra income as she chooses.

### The Positions of the Trustee and Amex

The trustee and Amex argue that tuition for private education of a debtor's child is not a reasonably necessary expense because quality public education for children with special needs is available without additional cost.

### CONCLUSIONS OF LAW

#### a. Private School Tuition Is Not A Reasonably Necessary Expense Under These Circumstances

 Code section 1325(b)(1)(B) requires that all "disposable income" be used to fund a plan if the trustee or an unsecured creditor objects to the plan and unsecured creditors will not receive full payment. Section 1325(b)(2)(A) defines "disposable income" as ". . . income which is received by the debtor and which is not reasonably necessary to be expended . . . for the maintenance or support of the debtor or a dependent of the debtor. . . ." The party objecting to confirmation bears the initial burden of presenting evidence that the proposed plan does not include all disposable income, but the "ultimate burden" then shifts to the debtor to show compliance with the requirements of section 1325(b)(1)(B). *In re Rothman*, 206 B.R. 99, 104 (Bankr.E.D.Pa.1997); *In re Packham*, 126 B.R. 603, 607 (Bankr. D.Utah 1991); *In re Fries*, 68 B.R. 676, 685 (Bankr.E.D.Pa.1986). The court finds that the trustee and Amex have satisfied their burden and that the debtor has not satisfied his burden.

This court stated in *In re McNulty*, 142 B.R. 106 (Bankr.D.N.J.1992), that it is not the court's "view that a debtor's creditors should pay tuition for the debtor's children." *Id.* at 110 (*citing In re Jones*, 55 B.R. 462 (Bankr.D.Minn.1985)). In *In re Jones*, the court found $500 per month for secondary school tuition excessive, stating that "[a]n expensive private school education is not a basic need of the Debtor's dependents, particularly in view of the high quality public education available. . . ." *Id.* at 467. *See also Univest–Coppell Village, Ltd. v. Nelson*, 204 B.R. 497, 500 (E.D.Tex.1996) (finding monthly payment of $395 for private high school

was not a reasonably necessary expense). The debtor cites *In re MacDonald*, 222 B.R. 69 (Bankr.E.D.Pa.1998), for the proposition that private school tuition may be a reasonably necessary expense under certain circumstances. The *MacDonald* court found, however, that the expenses at issue for parochial school tuition in another state were not reasonably necessary. *Id.* at 77.

■ The debtor presented no evidence as to the existence or nature of his son's disability. If the son is disabled, the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, obligates the states to provide disabled children with a "free appropriate public education." 20 U.S.C. § 1412(1). If a child's disability is such that education in public school does not meet the child's needs, IDEA requires that the board of education for that school district pay for an appropriate private placement. *Ridgewood Board of Education v. N.E.*, 172 F.3d 238 (3d Cir.1999). The debtor offers no explanation as to why his son's educational needs are not being satisfied under IDEA at no cost to the Ehrets. The debtor has therefore failed to meet his burden of proving that his son's private school tuition is a reasonable, necessary expense under Code section 1325(b)(2)(A).

### b. The non-debtor spouse's income must be included on Schedule I.

■ Code section 1325(b)(1)(B) requires a plan to include all of the debtor's projected disposable income. Code section 1325(b)(2)(A) provides that "disposable income" means income "which is received by the debtor" and not a reasonably necessary expense. Although section 1325(b) does not explicitly require the inclusion of a non-debtor spouse's income in the disposable income computation, case law addressing the question holds that such income must be considered in computing the debtor's disposable income. 2 KEITH LUNDIN, CHAPTER 13 BANKRUPTCY, 2nd ed., § 5.35 p. 5–96 (1997). Although this court is not aware of a controlling case on point from

the U.S. Court of Appeals for the Third Circuit, that court affirmed the relevant part of a case that analogized treatment of a non-debtor spouse's income for purposes of exemption under Code section 522(d)(10)(E) with plan confirmation under section 1325(b)(1). The district court stated that "compliance with the minimum requirements for funding the plan mandates inclusion of a non-debtor spouse's income, as well as expenses, when determining the debtor spouse's 'disposable income.'" *Matter of Velis*, 123 B.R. 497, 511–12 (D.N.J. 1991) (*citing In re Belt*, 106 B.R. 553, 563 (Bankr.N.D.Ind.1989); *In re Rose*, 101 B.R. 934, 943 (Bankr.S.D.Ohio 1989); *In re Saunders*, 60 B.R. 187, 188 (Bankr. N.D.Ohio 1986)), *rev'd in part on other grounds, Velis v. Kardanis*, 949 F.2d 78 (3d Cir.1991). Other courts also have interpreted section 1325(b)(1) as requiring consideration of a non-debtor spouse's income. *See, e.g., In re Schnabel*, 153 B.R. 809, 818 (Bankr.N.D.Ill.1993) (where debtor included wife's expenses but not her income, court stated "[s]uch a proposal in effect suggests that the Debtor's creditors subsidize his wife's living expenses—a result not contemplated by the statute.") (citations omitted); and *In re Cardillo*, 170 B.R. 490, 492 (Bankr.D.N.H.1994) ("A non-debtor spouse's income and expenses are to be taken into consideration when determining whether all of the debtor's disposable income is being applied to the plan.") (*citing In re Belt*, 106 B.R. 553).

The debtor cites to *In re Belt* for the proposition that a non-debtor spouse's income is not required to be used to fund the debtor's plan. *Belt* held, however, that income of a non-debtor spouse must be included in the debtor's statement of income. The debtor attempts to emphasize that portion of *Belt* which stated that "[t]his is not to say, however, that all excess income, even that belonging to the non-debtor spouse must be dedicated to fund the plan in order to comply with § 1325(b)(1)(B)." *In re Belt*, 106 B.R. at 563. It is clear, however, that *Belt* was

referring only to a contingency or reserve fund in the latter statement. After holding that the non-debtor spouse's income must be included, *Belt* added that "a reasonable reserve or contingency fund in the debtor's budget would not violate 11 U.S.C. § 1325(b) and is properly part of the disposable income analysis." *Id.* (citing *In re Fries,* 68 B.R. 676, 683 n. 7 (Bankr.E.D.Pa.1986)).

A reasonable reserve fund in a budget is not at issue here. At issue is whether a $2,000 expense for private school tuition is a reasonable, necessary expense under Code section 1325(b)(2)(A), and the court holds that it is not. Since the plan therefore does not propose to pay all of the debtor's projected disposable income into the plan as required by Code section 1325(b)(1)(B), the objections of the trustee and Amex are sustained and confirmation is denied.

## CONCLUSION

This case was filed on October 6, 1998 and the debtor has yet to achieve confirmation of a plan, the most recent of three versions now having been rejected. If the debtor intends to file another plan, it is to be done within ten days of service of the order denying confirmation of this plan. If no further plan is filed within that time, or if any further plan is not confirmed, the trustee shall move for dismissal or conversion under Code section 1307(c).

The trustee is to submit an order within seven days on notice under D.N.J. LBR 9072–1(c).