**In re Henry & Lori NICOLA, Debtors.**

**Bankruptcy No. 99–B–28584.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Feb. 4, 2000.

John A. Reed, Joliet, IL, for Plaintiff.

Glenn B. Stearns, Costa Mesa, CA, Trustee.

**1.** The Trustee did not specify on what ground he seeks dismissal.

## RULING ON OBJECTION TO CONFIRMATION

JOAN HUMPHREY LEFKOW, Bankruptcy Judge.

Debtors Henry and Lori Nicola (the "Debtors") seek relief under Chapter 13 of the United States Bankruptcy Code (the "Code") and have submitted a First Amended Chapter 13 Plan (the "Plan") for confirmation. Glenn Stearns, the Standing Chapter 13 Trustee (the "Trustee"), objects to confirmation alleging that the debtors are not committing all of their disposable income to the plan. Additionally, the Trustee prays that the debtors' case be dismissed for cause under 11 U.S.C. § 1307(c).[1]

### JURISDICTION AND PROCEDURE

This court has jurisdiction to decide this matter under 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(L).

### FACTS

On January 21, 2000, the debtors filed the First Amended Plan. It proposes that the debtors will pay $686 per month to the Trustee for a period of 40 months, from which the creditors with secured and § 507[2] priority claims "shall be paid 100%." The Plan estimates that any general unsecured creditors will receive ten percent of the amount of their claims during the life of the Plan, or, if this does not occur, the Plan provides that the debtors will continue their monthly Plan payments for the shorter of 24 additional months or until the Trustee has received sufficient funds to pay the unsecured creditors ten percent of their claims.

The debtors' Schedule J indicates that they are expending $260 per month for private school tuition to send debtor Lori Nicola's daughter to St. Jude's School. In

**2.** All statutory references are to Title 11 of the United States Code unless otherwise noted.

support of this expenditure, the debtors submitted to this court the Affidavit of Lori Nicola (the "Affidavit"). The Affidavit contains allegations that students at the public school in the debtors' area, Dirksen Junior High School ("Dirksen"), perform below state levels in all grades and in all subjects, *Aff.* at ¶ 5, and that students at St. Jude's score substantially higher, *Aff.* at ¶ 6. Additionally, the Affidavit contains allegations that, based upon information and belief, there are substantial disciplinary problems at Dirksen. *Aff.* at ¶ 7. Debtor Lori Nicola testified that both she and the child's natural father, who is not a debtor in this case, are practicing Catholics and desire that their child attend a Catholic school, *Aff.* at ¶ 8, and that she herself attended Catholic schools for 12 years, *Aff.* at ¶ 9. The child has attended Catholic school her entire life and wishes to continue doing so. *Aff.* at ¶ 10.

## DISCUSSION

The Trustee contends that the debtors' payment of private school tuition is not a reasonably necessary expense and constitutes disposable income, and that, therefore, the debtors are not committing all of their disposable income to the Plan.

■ The court disagrees with the Trustee and concludes that his objection must be overruled in this instance because the private school tuition payments are reasonably necessary expenses. § 1325 of the Bankruptcy Code provides:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan-
>
> . . . .
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be

applied to make payments under the plan.

Disposable income is defined in § 1325:

> (b)(2) For the purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended-
>
> (A) for the maintenance or support of the debtor or a dependent of the debtor. . . .

Consequently, the disposable income requirement turns on whether the debtor's budgeted expenses are reasonably necessary. *In re Reyes,* 106 B.R. 155, 157 (Bankr.N.D.Ill.1989).

■ What is "reasonably necessary" is a question of fact for which the outcome can vary from judge to judge and jurisdiction to jurisdiction. *In re Bolger,* 1998 WL 351032, *4 (Bankr.N.D.Ill.1998). Determining what is "reasonably necessary" and what is not requires the court to "engage in the unenviable task of scrutinizing the debtor's schedule of income and expenditures." *In re Johnson,* 241 B.R. 394, 398 (Bankr.E.D.Tex.1999). There is no bright line rule for determining what is "reasonably necessary." *Reyes,* 106 B.R. at 157. Because there is no precise standard, some courts have strictly scrutinized expenses, some have been more deferential to the debtor, and most have settled at a some median between these two extremes. *Johnson,* 241 B.R. at 398.

■ It is clear that food, clothing and other essentials are considered "reasonably necessary" for the debtor's maintenance and support. *Id.* Some courts also allow expenditures for recreation, clubs, magazines, newspapers and the like. *Id.* at 399. In any event, "reasonably necessary" probably means adequate, but not first class, and luxury items are excluded. *Bolger,* 1998 WL 351032 at *4 (citation omitted). While judges should not allow debtors to continue in a lifestyle that drove them into bankruptcy, courts should not require debtors to alter their lifestyle

where there is no obvious indulgence in luxuries. *Bolger*, 1998 WL 351032 at *4 (citation and internal quotation omitted). Expenses may amount to an obvious indulgence in luxuries when a debtor is enjoying luxuries that are not enjoyed by an average American family. *See In re Navarro*, 83 B.R. 348, 355 (Bankr.E.D.Pa. 1988). For example, a Chevrolet Blazer sport utility vehicle is an "obvious overindulgence" for a debtor who lives three miles from work and presumably near paved roads. *Reyes*, 106 B.R. at 157–58.

■ There is a split of authority on the issue of whether payment of school tuition is a reasonably necessary expense for a debtor in a Chapter 13 case. One line of cases holds that tuition payments are not a reasonably necessary expense. *In re Ehret*, 238 B.R. 85 (Bankr.D.N.J.1999); *In re MacDonald*, 222 B.R. 69 (Bankr.E.D.Pa. 1998); *Univest–Coppell Village, Ltd. v. Nelson*, 204 B.R. 497 (E.D.Tex.1996); *In re Jones*, 55 B.R. 462 (Bankr.D.Minn.1985). The other line holds that tuition payments are a reasonably necessary expense. *In re Riegodedios*, 146 B.R. 691 (Bankr.E.D.Va. 1992); *In re Navarro*, 83 B.R. 348 (Bankr. E.D.Pa.1988).

The holdings that the tuition payments were not reasonably necessary were based upon specific facts presented in the cases. In *Ehret*, the debtors wished to spend $2,000 per month for private school tuition for their son, arguing that he had special education needs. *Ehret*, 238 B.R. at 86. Although the tuition was to be primarily funded by the non-debtor spouse, the court found that, under the circumstances, the tuition was not a reasonably necessary expense, because the debtor presented no evidence of his son's disability. *Id.* Further, the court noted that federal law[3] obligates states to provide disabled children with a free, appropriate public education or to pay for private school. In *MacDonald*, the court found that spending $175 per month for parochial school tuition was not reasonably necessary because the

debtors sent their 12 year old son to a Catholic school in New York City, far from their home in rural Pennsylvania, and raised no claim of any deficiency in the local public schools. *MacDonald*, 222 B.R. at 72. Sending a child to another state, the court reasoned, is more like sending a child to private boarding school than like sending her to a religious school, and boarding school would normally be considered a luxury expense. *Id.* at 77. The *Nelson* court based its finding that $395 per month parochial school tuition payments were not reasonably necessary on the fact that the debtors' older daughter had attended public school and that the debtor-father stated that he did not have problems with the education offered at the public school. *Nelson*, 204 B.R. at 500. Finally, in *Jones*, the court found that tuition payments were not reasonably necessary because spending $500 per month for college tuition and another $500 per month for secondary school tuition was excessive, particularly because of the high quality of public education available in this country. *Jones*, 55 B.R. at 467.

Here, the debtors' situation is more like those of the cases where courts found tuition payments to be reasonably necessary. In *Navarro*, for example, the debtors were devout Seventh Day Adventists and considered religious education central to their beliefs and faith. *Navarro*, 83 B.R. at 351. There, the bankruptcy court overruled a creditor's objection to the confirmation of the debtors' plan when the debtors were expending $100 per month on parochial school tuition for their child. The court stated that, since it is not unusual for families to send their children to parochial schools, a court should not consider doing so a luxury, while sending a child to boarding school, which is much less common, would be a luxury. *Id.* at 355. Additionally, the court noted that ordering debtors to change their lifestyle when there is no obvious indulgence in luxuries would con-

**3.** 20 U.S.C. § 1400 et. seq.

travene the intent of Congress and place impossible burdens on the courts, which would be forced to determine the absolute necessity of every expense in every budget. *Id.*

Likewise, in *Riegodedios,* the court allowed the debtors to continue paying $614 per month for tuition for their daughter's senior year of college. *Riegodedios,* 146 B.R. at 693. The court found the expense to be reasonably necessary because it was not a new expense of the debtors, as they had been paying her tuition throughout college, and because they were not spending an unreasonable amount of money on tuition at a private college. *Id.* The court pointed out that Congress enacted Chapter 13 as a way to encourage debtors to pay their debts, and commented that education is beneficial, would make the daughter more productive, and is part of the "fresh start" envisioned by the Bankruptcy Code. *Id.*

Here, the debtors are spending $260 per month to send the child to Catholic school. This is not an excessive amount; it is far less than the $2,000 in *Ehret* or the $1,000 total monthly expenditure in *Jones,* a case which was decided in 1985. The debtors here do not send the child away to boarding school; she attends a local Catholic school in Joliet, where the debtors reside. Additionally, the debtors have alleged that the local public school is inadequate and have provided a "School Report Card" indicating that, in fact, average standardized test scores at the public school are below those of the state as a whole. Additionally, the child has attended Catholic school her entire life, and therefore this is not a new expense for the debtors. The court is also mindful that there would likely be significant emotional cost to the child to change placement in her final year of elementary school. Finally, Lori Nicola stated in her deposition that she and the child's father are practicing Catholics and desire their daughter to attend Catholic school as Lori did. Any of the above facts alone may not be enough to warrant a finding that the tuition expense is reasonably necessary. However, taken as a whole, the facts in this case indicate that the debtors' monthly payment of $260 for Catholic school tuition is reasonably necessary.

Because the monthly payments for Catholic school tuition are a reasonably necessary expenditure for the debtors, the Trustee's objection to confirmation is overruled.

### CONCLUSION

For the above reasons, the Trustee's objection to the confirmation of debtor's Amended Chapter 13 Plan is hereby overruled. This Opinion constitutes the court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.